In re Edward G. LeROUX, Jr., and Albert F. Curran, Sr., Debtors.

SUMMIT INVESTMENT AND DE-VELOPMENT CORPORA-TION, Plaintiff,

v.

Edward G. LeROUX, Jr., and Albert F. Curran, Sr., Defendants.

Bankruptcy Nos. 92–20403–WCH, 92–21116–WCH. Adv. Nos. 93–1456, 93–1457.

United States Bankruptcy Court, D. Massachusetts, Eastern Division.

May 10, 1994.

Stephen F. Gordon, Stanley W. Wheatley, Gordon & Wise, Boston, MA, for plaintiff Summit Inv. and Development Corp.

Paul D. Moore, Andrew C. Griesinger, Theodore A. Lund, Choate, Hall & Stewart, Boston, MA, for defendants Edward G. Le-Roux, Jr. and Albert F. Curran, Sr.

## *DECISION REGARDING PLAINTIFF'S COMPLAINTS FOR DECLARATORY JUDGMENT*

WILLIAM C. HILLMAN, Bankruptcy Judge.

Edward G. LeRoux, Jr. (LeRoux) and Albert F. Curran, Sr. (Curran) are debtors in separate cases before this Court. Before the Court are complaints filed by plaintiff, Summit Investment and Development Corporation ("Summit"), against each debtor seeking injunctive and declaratory relief to remove the defendants as general partners of a partnership of which Summit is also a general and limited partner. The adversary proceedings were consolidated by order of this Court dated 9/13/93.

On March 30, 1994, the Court conducted a hearing on the cross motions for summary judgment and a trial on the complaint and answers thereto. The Court denied both motions for summary judgment based on the existence of disputed issues of material fact [1] and proceeded with the trial. At the close of evidence the Court also denied Summit's request for preliminary injunction, established a post-trial briefing schedule, and took the matter under advisement.

In accordance with Fed.R.Bankr.P. 7052, the following constitute the Court's findings of fact based upon the parties' joint pre-trial statement, the testimony, and documentary evidence introduced at trial.

### *Facts*

On March 26, 1986, LeRoux, Curran, and George Page ("Page") executed an Agreement and Certificate of Limited Partnership (the "Original Partnership Agreement") forming Belle Isle Limited Partnership ("BI"). Initially, LeRoux, Curran, and Page each owned 1% of BI as General Partners and 9% as "Original Limited Partners." The remaining 70% was to be sold to "Investor Limited Partners," in accordance with the provisions of the Original Partnership Agreement discussed below.

On October 21, 1986, after Page died, Curran and LeRoux executed a Certificate of Amendment effective August 22, 1986 (the date of Page's death). The amendment provided for Page's general and limited partnership interests to be converted to a "Special Limited Partner" interest.

On December 15, 1986, Curran and LeRoux executed a Second Amended and Restated Agreement and Certificate of Limited Partnership relative to BI ("the Second Amended Partnership Agreement" or "partnership agreement") effective September 1, 1986. This document, as subsequently amended, is the operative partnership agreement currently governing the rights of BI partners. Section 6.3(B) of the partnership designated LeRoux as Managing General Partner. The Second Amended Partnership Agreement was amended on December 16, 1987 by Certificate No. 6 to admit Summit as a 1% General Partner and a 9% Limited Partner.

On October 13, 1992, LeRoux filed a voluntary petition under Chapter 11 of the Code. Curran filed his voluntary petition under Chapter 11 on October 30. In its complaint,

---

1. As will be seen, the Court has determined that the issues involved in this case can be determined as a matter of law.

Summit contends that provisions in the partnership agreement and Mass.Gen.L. ch. 109, § 23(4) converted Curran and LeRoux's interests in BI from general partner to limited partner interests when they filed their respective bankruptcy petitions. As a result of the conversion, Summit argues, LeRoux is not entitled to act as BI's Managing General Partner and Curran and LeRoux are no longer General Partners entitled to participate in the management of BI. Curran and LeRoux argue that the provisions of the Massachusetts General Laws and the partnership agreement which purport to strip them of their General Partner status are invalid as "ipso facto" clauses pursuant to either §§ 365(e)(1) or 541(c)(1)(B).

### Discussion

At issue in this case is what Judge Case called "the complex and often tortuous interaction" between the Bankruptcy Code, state partnership law, and a partnership agreement entered into pursuant to that law. *Cutler v. Cutler (In re Cutler)*, 165 B.R. 275, 276 (Bankr.D.Ariz.1994). For the reasons that will follow the Court grants judgment in favor of the defendants.

### The Partnership Agreement as an Executory Contract

■ The threshold issue is whether the Second Amended Partnership Agreement, as amended, is an executory contract.

■ Section 365 of the Bankruptcy Code provides that, with certain exceptions, the trustee, subject to court approval, may assume or reject an executory contract of the debtor. The Code furnishes no express definition of an executory contract. Professor Countryman, whose definition I adopted in *In re Drake*, 136 B.R. 325 (Bankr.D.Mass. 1992), defined an executory contract as one under which the obligations of both parties are so far unperformed that the failure of either party to perform would constitute a material breach excusing the performance of the other. Countryman, *Executory Contracts in Bankruptcy*, 57 Minn.L.R. 439, 460 (1973). Under the partnership agreement all of the general partners have an obligation to continue to "do all things which may be

reasonably necessary to manage the affairs and business of the partnership." (Second Amended Partnership Agreement, § 6.4). Many material obligations among the partners still remain and therefore, I find that the Second Limited Partnership Agreement is an executory contract subject to § 365. This holding is in agreement with the majority of courts who have considered the issue. *See Breeden v. Catron (In re Catron)*, 158 B.R. 629, 634 (E.D.Va.1993); *In re Priestley*, 93 B.R. 253, 258–59 (Bankr.D.N.M.1988); *Burley v. American Gas & Oil Investors (In re Heafitz)*, 85 B.R. 274, 284 (Bankr.S.D.N.Y. 1988); *In re Corky Foods Corp.*, 85 B.R. 903, 904 (Bankr.S.D.Fla.1988); *In re Sunset Developers*, 69 B.R. 710, 712 (Bankr.D.Idaho 1987); *Skeen v. Harms (In re Harms)*, 10 B.R. 817, 821 (Bankr.D.Colo.1981).

■ The determination that this contract is executory does not decide, however, whether it has been terminated. A trustee or debtor in possession's power to assume or reject an executory contract is limited by § 365(c). The next issue is whether § 365(c) would permit Curran and LeRoux, as debtors in possession, to assume the rights and duties of the partnership agreement.

Section 365(c)(1) states:

(c) The trustee may not assume or assign an executory contract ... of the debtor, whether or not such contract ... prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) applicable law excuses a party, other than the debtor, to the contract ... from accepting performance from or rendering performance *to an entity other than the debtor or the debtor in possession* whether or not such contract ... prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment ...

11 U.S.C. § 365(c)(1) (emphasis added).

The present language of § 365(c) was added to the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), Pub.L. No. 98–353, 98 Stat. 333 (1984). Section 362(a) of BAFJA amended

11 U.S.C. § 365(c)(1)(A) by substituting the phrase "an entity other than the debtor or debtor in possession" for the words "the trustee." The legislative history for the change provides:

> This amendment makes it clear that the prohibition against a trustee's power to assume an executory contract does not apply where it is the debtor that is in possession and the performance to be given or received under a personal service contract will be the same as if no petition had been filed because of the personal service nature of the contract.

*In re Cardinal Industries, Inc.,* 116 B.R. 964, 979 (Bankr.S.D.Ohio 1990) (quoting H.R.Rep. No. 1195, 96th Cong., 2d Sess. § 27(b) 1980).

Curran and LeRoux's status as debtors in possession exempts them from the restrictions of this statute. A debtor in possession can assume and perform a personal service contract notwithstanding that such contract is otherwise barred from assumption and assignment by a trustee under applicable law. *Id.* In effect, the non-debtor parties will not be prejudiced as they would be dealing with the same persons with whom they originally contracted. Although there is no assurance at this stage of the debtors' reorganizations that they could or would perform under the partnership agreement as if they had never filed their petitions, that issue is premature and will not be ripe for discussion until the debtors seek to assume the partnership agreement. In reaching this conclusion, this Court disagrees with those cases which distinguish a pre-petition debtor from a debtor in possession. *See e.g., In re Catron,* 158 B.R. at 632 (holding that the debtor in possession is subjected to the restrictions imposed by § 365(c) because it stands in the shoes of a trustee); *In re Sunset Developers,* 69 B.R. at 710, (holding that the debtor in possession was a different legal entity than the debtor partner); *In re Harms,* 10 B.R. at 821 (debtor in possession is not the same entity as pre-bankruptcy debtor but is a new entity with its own rights and duties). The "new entity" theory proposed by these cases is at odds with the Supreme Court's view of the issue: "[I]t is sensible to view the debtor-in-possession as the same 'entity' which exist-ed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have done absent the bankruptcy filing." *N.L.R.B. v. Bildisco & Bildisco (In re Bildisco),* 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984). At this point in the discussion, it would appear that the partnership agreement is at least capable of assumption by the debtors under § 365(c).

### *Ipso Facto Clause*

■ The next issue for the Court to determine is whether Massachusetts General Law ch. 109, § 23(4) and §§ 7.5(E) and 7.6(A) of the partnership agreement, which would divest Curran and LeRoux of their general partner status as of their respective petition dates, are void as ipso facto clauses under § 365(e).

### *§ 365(e)(1)*

Section 365(e)(1) invalidates "ipso facto" clauses, i.e. clauses which modify or terminate the rights of a trustee or debtor in possession as a result of the debtor's bankruptcy filing. The statute states, in relevant part:

> 1) Notwithstanding a provision in an executory contract ..., or in applicable law, an executory contract ... of the debtor may not be terminated or modified, and any right or obligation under such contract ... may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract ... that is conditioned on—
>
> ... (B) the commencement of a case under this title ...

11 U.S.C. § 365(e)(1).

Mass.Gen.L. ch. 109, § 23(4) provides that the bankruptcy of a general partner terminates his general partner status. The statute states, in part:

> Except as approved by the specific written consent of all partners at the time, a person ceases to be a general partner of a limited partnership upon the happening of any of the following events:

(4) Unless otherwise provided in writing in the partnership agreement the general partner ... (ii) files a voluntary petition in bankruptcy ...

Mass.Gen.L. ch. 109 § 23(4) (1988). The statute is predicated on the filing of a general partner's voluntary petition under the Code. As such, the provision is voidable under § 365(e)(1).[2] *See generally, In re Rittenhouse Carpet, Inc.,* 56 B.R. 131, 132 (Bankr. E.D.Pa.1985) (provisions of partnership agreement providing for removal of general partner that filed for bankruptcy were invalid); *CP Yorktown, Inc. v. Fidelity American Mortgage Co. (In re Fidelity American Mortgage Co.),* 10 B.R. 781, 782–83 (Bankr. E.D.Pa.1981) (removal of a debtor/partner may not be conditioned merely on the filing of a petition in bankruptcy, notwithstanding provisions of state law to the contrary).

Section 7.5(E) of the Second Amended Partnership Agreement, as amended in 1987, states:

Notwithstanding anything to the contrary contained in this Agreement, the entire interest of any General Partner or Original Limited Partner (whether as General Partner or as Original Limited Partner and including an interest which he or it then holds pursuant to Section 10.4D) who *Retires* from this Partnership, whether voluntarily or involuntarily (except in the event of a transfer permitted under Section 7.1A.), shall, from the date of occurrence of Retirement, automatically be converted to an interest as a Special Limited Partner having the same rights to profits, losses, and distributions of the Partnership as held by such General or Original Limited Partners prior to Retirement. (emphasis added)

Article I of the Second Amended Partnership Agreement, as amended by Certificate No. 6, defines "Retirement" as follows:

Retirement (including the verb form Retire and the adjective form Retired) means

as to a General Partner (and shall be deemed to have occurred automatically upon) the occurrence of ... Event of Bankruptcy, ... or voluntary or involuntary withdrawal from the Partnership for any reason. Involuntary withdrawal shall occur whenever a General Partner may no longer continue as a General Partner by law, death, incapacity or pursuant to any terms of this Agreement.

"Event of Bankruptcy" is defined in Article I of the Second Amended Partnership Agreement as: "the commencement by such person of a voluntary case under federal bankruptcy laws ..." These provisions of the partnership agreement similarly modify and terminate rights of general partners upon the commencement of a voluntary bankruptcy case and are also unenforceable as ipso fact clauses under § 365(e)(1). Curran and LeRoux's status as general partners has not been terminated by operation of state or partnership agreement law.

### § 365(e)(2)

Even though § 365(e)(1) generally invalidates "ipso facto" clauses, § 365(e)(2)(A) carves out from the general effect of § 365(e)(1) those kinds of contracts where "applicable law" excuses non-debtor parties to a contract from accepting substitute performance and where such parties do not consent to assumption. The possible applicability of this section was raised by both parties. The language of § 365(e)(2)(A) mirrors, in all significant respects, the language of found in § 365(c). For the reasons stated above with regard to § 365(c), the Court finds the § 365(e)(2)(A) exception inapplicable in the instant case.

### Conclusion

The Court denies Summit's request for a judgment declaring that upon their filing of bankruptcy, Curran and LeRoux's general

---

**2.** Neither Summit nor the defendants have raised the applicability or impact of Mass.Gen.L. ch. 109, § 44 entitled "Nonjudicial dissolution," which states that a Massachusetts limited partnership shall be dissolved and its affairs closed upon the happening of an "event of withdrawal." "Event of withdrawal" is defined in § 1(3) of ch.

109 as "an event that causes a person to cease to be a general partner as provided in section twenty-three." Because § 44 is premised on the applicability of a portion of ch. 109 rendered unenforceable by this decision, I find § 44 inapplicable as well.

and limited partner interest were automatically converted to Special Limited Partner interests and that upon LeRoux's bankruptcy, he ceased to have any rights as Managing Partner of BI.

Nothing in this decision shall limit the Court's rights to later assess the merits of a request by Curran, LeRoux, or other party in interest to assume or reject the BI partnership agreement under § 365(a) through motion, plan, or otherwise. At this time, I merely hold that the partnership agreement is *capable* of assumption.