[No. 33521-9-I.    Division One.    January 23, 1995.]

LINDA FINKELSTEIN, *Appellant*, v. SECURITY
PROPERTIES, INC., ET AL, *Respondents*.

*John H. Strasburger*, for appellant.

*Charles P. Nomellini*, for respondents.

BAKER, A.C.J. — Stephen Finkelstein's estate (Finkelstein)[1] appeals an order dismissing most of his claims against Security Properties as barred by the statute of limitations. We affirm the trial court's disposition, but on different grounds. We hold that under state partnership law, which is not superseded by federal bankruptcy law, a partnership dissolves upon the chapter 7 bankruptcy filing of one of the partners. We also affirm the trial court's ruling that Finkelstein does not have standing to bring a derivative action on behalf of the limited partners.

## FACTS

Finkelstein, while serving as general counsel for Security Properties, became a minority partner in two general partnerships.[2] These partnerships each served as general partner for several limited partnerships. Finkelstein's employment with Security Properties ended in 1974. In 1976 and 1977 each general partnership agreement was amended to provide that the partnership would not dissolve or terminate upon the death, incapacity, or bankruptcy of any partner. Finkelstein filed chapter 11 bankruptcy in 1981, which converted to chapter 7 in 1982. Also in 1982, each general partnership amended its partnership agreement with specific reference to Finkelstein's bankruptcy.

Finkelstein continued to receive correspondence and tax forms from Security Properties which referred to him as a

---

[1]Stephen Finkelstein commenced this action in his individual capacity, and subsequently died. Substitution was properly made, and Linda Finkelstein now sues as personal representative of Stephen's estate.

[2]Security Properties — '72 and Security Properties — '73. All claims related to Security Properties — '73 were deemed settled by the parties in the trial court's final judgment.

partner in the two general partnerships. In 1984 the 1982 amendments were produced during a deposition of the majority partner taken by the bankruptcy trustee.

In 1991 Finkelstein filed the instant actions against Security Properties and the general partnerships for an accounting, breach of fiduciary duties, and a derivative action on behalf of several limited partnerships. After the actions were consolidated, the trial court dismissed the derivative action for lack of standing. On cross motions for summary judgment regarding the remaining claims, the trial court ruled in part that RCW 25.04.310(5), which states that the bankruptcy of a partner dissolves a general partnership, is superseded by the federal bankruptcy code, and if the statute is not superseded, the 1976 and 1977 amendments negate its effect. The court also ruled that the partnership agreements were executory contracts which were deemed rejected when not assumed by the bankruptcy trustee, and the rejection dissolved the partnerships under RCW 25.04.310(2); the 1982 amendments reformed the partnerships to continue without Finkelstein, and subsequent communications did not nullify this reformation; the federal bankruptcy code's automatic stay provision does not affect a dissolved partnership; Finkelstein is entitled to equitable tolling of the statute of limitations until 1984 when he became aware of the 1982 amendments; and the surviving partners owed a duty to account and pay the value of Finkelstein's share calculated at time of dissolution.

The majority of appellant's claims were then dismissed based on the 6-year statute of limitations for actions arising from written contracts.

## I

Neither party disputes the application of a 6-year limitations period. *See also Taplett v. Khela*, 60 Wn. App. 751, 754, 807 P.2d 885 (1991) (holding that an action for an accounting must be commenced within 6 years of dissolution

of the partnership). The disagreement is over when Finkelstein's cause of action accrued. We review the summary judgment ruling de novo. *See Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 65, 837 P.2d 618 (1992).

The trial court found that even if the partnerships did not dissolve as a matter of law, Finkelstein was aware he had a cause of action no later than 1984, when he attended the majority partner's deposition. At that deposition, amendments to both partnerships were produced which the trial court found unambiguously expressed the intent of the parties to exclude Finkelstein from the partnerships. Exclusion and dissolution each give rise to a cause of action for an accounting. RCW 25.04.220, .430. Finkelstein argues that the amendments had the opposite effect; they were really reaffirmations of his membership in the partnerships.

The amendments may be read to show an intent of the remaining partners to continue without Finkelstein due to Finkelstein's bankruptcy. Some ambiguity can be noted in the documents, such as references to Finkelstein as "a member". More ambiguity appears when the amendments are considered in light of subsequent correspondence Finkelstein received from the partnerships, as well as other partnership documents, referring to him as a partner. A genuine issue of fact exists regarding the meaning of these amendments, and therefore whether Finkelstein became aware of his cause of action by virtue of the production of these amendments at the deposition. The trial court's ruling to the contrary was error. The error does not require a reversal of the result below, however, because we hold that the partnerships were dissolved by the 1982 chapter 7 bankruptcy proceeding.

## II

The trial court ruled that each general partnership agreement was an executory contract, which was deemed rejected by the trustee in bankruptcy because it was not assumed by the trustee within 60 days of conversion of the bankruptcy to a chapter 7 proceeding under the bankruptcy code, 11 U.S.C. § 365(d)(1). "[C]ourts have generally assumed

that partnership agreements are, at least in part, executory contracts." *In re Cutler*, 165 B.R. 275, 279-80 (Bankr. D. Ariz. 1994) (acknowledging "the complex and often tortuous interaction between the Bankruptcy Code, state partnership law, and a general partnership agreement"; *Cutler*, 165 B.R. at 276). However, Finkelstein's bankruptcy trustee was not free to assume the contract under § 365 because the other partners were not obligated to accept such an assumption. Partnerships are voluntary associations, and partners are not obligated to accept a substitution for their choice of partner. The restraint on assumability also makes the deemed rejection provision of § 365 inapplicable to the partnership agreement. *See In re Sunset Developers*, 69 B.R. 710, 713 (Bankr. D. Idaho 1987). Therefore, § 365(e)'s invalidation of ipso facto provisions does not apply, and state partnership law is not superseded.[3] *See Sunset Developers*, 69 B.R. at 713; *In re Clinton Court*, 160 B.R. 57 (Bankr. E.D. Pa. 1993) (holding that a nondebtor partner is not also prevented from filing bankruptcy on behalf of the partnership when one partner has filed individually).

The *Sunset Developers* analysis has recently been followed and expanded. *In re Cutler, supra.*[4] In *Cutler* the court reconciled § 365 with state partnership law by describing the executory aspect of a partnership contract to be the management rights and duties of a partner, and finding a partner's economic interest in the partnership to be nonexecutory, thus placing the bankruptcy trustee in the position of a creditor against the partnership. *See Cutler*, 165 B.R. at 280.

---

[3]As the Fifth Circuit noted in *In re Phillips*, 966 F.2d 926, 935 n.11 (5th Cir. 1992), the courts which have ruled that § 365(e) supersedes state partnership law have failed to apply § 365(e)(2) to their analysis. Section 365(e) was designed to invalidate bankruptcy termination clauses (ipso facto provisions) in contracts. Section 365(e)(2) clarifies Congress' intention to prevent only private contracts from counteracting the bankruptcy code, not to prevent state law, such as partnership law, from determining the status of a partnership. *Phillips*, 966 F.2d at 935.

[4]Because we follow *Cutler* on this issue, and *Cutler* involved a chapter 7 bankruptcy, we decline to analyze the effect of Finkelstein's initial chapter 11 bankruptcy filing. *See, e.g., In re LeRoux*, 167 B.R. 318 (Bankr. D. Mass. 1994).

Section 365 is clearly not applicable to the executory portion of the partnership contract because partnership agreements are purely consensual and the freedom of the partners to associate and dissociate is the heart of partnership law. The court allowed the partnership to "dissolve" under state partnership law while retaining the debtor-partner's economic interest, as protected by other sections of the bankruptcy code. *See Cutler*, 165 B.R. at 278.

RCW 25.04.310(5) provides that dissolution of a partnership is caused "[b]y the bankruptcy of any partner of the partnership[.]" Security Properties argued below pursuant to this statute that the partnerships dissolved upon Finkelstein's bankruptcy filing. The court rejected that argument and ruled that the statute was superseded by the bankruptcy code, 11 U.S.C. § 365. We find that § 365 is not applicable, and does not supersede RCW 25.04.310(5). Therefore, the partnerships dissolved when Finkelstein's bankruptcy converted to chapter 7.[5]

### III

Finkelstein argues that the 1976 and 1977 amendments to the partnership agreements provided that bankruptcy would not dissolve the partnerships, and that these amendments negate the contrary provision in RCW 25.04.310(5). While we have serious doubt that partnership agreements may nullify this statute,[6] we need not reach this issue be-

---

[5]The court noted in *Cutler* that the bankrupt partner retains a continuing economic interest in the partnership. We reject this dicta to the extent that it would toll the accrual of the bankrupt party's cause of action for an accounting. *See* RCW 25.04.420 (applicable by analogy).

[6]Some sections of the partnership act indicate that they can be altered by agreement. *See, e.g.*, RCW 25.04.180, .090. No such provision is found in RCW 25.04.310(5). Finkelstein appears to argue, as he argued below, that general partnership law allows this alteration. We disagree. The statutes allow for agreements dissolving a partnership, but not agreements circumventing the legal dissolution caused by any of the circumstances listed in RCW 25.04.310. Section 31 of the Uniform Partnership Act, from which RCW 25.04.310 was drafted, is apparently not intended to be alterable by agreement of the partners. 2 Alan R. Bromberg & Larry E. Ribstein, *Partnership* § 7.01(c), at 7:7-7:8 (1988). However, Bromberg and Ribstein also note that some jurisdictions, through case law or statute, have allowed agreements to alter § 31 of the Uniform Partnership Act. Bromberg & Ribstein § 7.01(c), at 7:8.

cause we conclude that the amendments to the partnerships did not actually provide that bankruptcy would not dissolve the partnerships. The amendments added to each partnership agreement's dissolution and termination section a new penultimate paragraph:

> "The above listed causes of termination are intended by the Partners to be the exclusive reasons for termination of the Partnership. Affirmatively, but not in limitation, the bankruptcy, death or incompetency of any Partner(s) shall not cause the dissolution nor termination of the Partnership unless said bankruptcy, death or incompetency shall leave only one remaining partner."

We conclude that the intention of these amendments was merely to clarify that the partnerships themselves would continue notwithstanding one of the listed occurrences. Finkelstein's interpretation of the amendments would cause the partnership to continue with a deceased or incompetent partner as a partner. Just as a deceased partner cannot remain a partner, *see* Bromberg & Ribstein § 7.01(c), at 7:50, RCW 25.04.310(5) provides that a bankrupt partner cannot remain a partner. The 1976 and 1977 amendments can be interpreted consistent with RCW 25.04.310(5), and do not supersede it.

## IV

The trial court determined that an equitable tolling of the statute of limitations was appropriate in this case. The court tolled the running of the limitations period, despite accrual of Finkelstein's cause of action no later than the deemed rejection of the partnership agreements, until the majority partner's 1984 deposition. The trial court found that the 1982 amendments, which were produced at that deposition, unambiguously reformed the partnerships to continue without Finkelstein. Because we find those amendments to be ambiguous, we must address the equitable tolling issue.

Equitable tolling is granted by the courts when justice requires. The predicates for an equitable tolling of the statute of limitations are either bad faith, deception, or false assurances by the defendant, and the exercise of diligence by the

plaintiff. *See Douchette v. Bethel Sch. Dist. 403*, 117 Wn.2d 805, 812, 818 P.2d 1362 (1991). Courts have determined that equitable tolling is appropriate when consistent with both the purpose of the statute providing the cause of action and the purpose of the statute of limitations. *Douchette*, 117 Wn.2d at 812.

Assuming, without deciding, that equitable tolling may be applied in this type of situation, it would not apply to the facts of this case. Finkelstein was a lawyer, and he should have known the effects of his bankruptcy on his business affairs. Furthermore, although Finkelstein admits learning of his cause of action in 1986 when the partnership agreements were rewritten, he failed to commence this action until 1991.[7]

## V

The trial court ruled that Finkelstein has no cause of action for breaches of fiduciary duties after dissolution. We agree. The only duties owed to Finkelstein after his removal from the partnership were the duties to account and pay to him (or his estate) the value of his share. Finkelstein ceased to be a member of the partnership upon dissolution, and has no rights against the remaining partners for their continuing business. It follows that he has no claims against the remaining partners for any alleged subsequent self-dealing. For the same reasons, we also affirm the trial court's dismissal of Finkelstein's derivative action.

Affirmed.

WEBSTER and BECKER, JJ., concur.

Reconsideration denied February 22, 1995.

Review denied at 127 Wn.2d 1002 (1995).

---

[7]Finkelstein apparently brought action against the partnerships in bankruptcy court in 1990, but the Bankruptcy Court, on motion of Defendants, set aside the action.