[No. 59243-2-I.   Division One.   May 27, 2008.]

THE CITY OF BELLEVUE, *Petitioner,* v. RUSLAN BENYAMINOV, *Respondent.*

*Lori Riordan*, *City Attorney*, and *Jeffrey D. Torrey* and *Jill M. Thiele*, *Assistants*, for petitioner.

*William Frick*, for respondent.

¶1 Cox, J. — A statute of limitations may be equitably tolled where there is evidence of " 'bad faith, deception, or false assurances by the defendant, and the exercise of diligence by the plaintiff.' "[1] Such tolling may be appropriate " 'when it would effectuate: 1) the policies underlying the statute, and 2) the purposes underlying the statute of limitations.' "[2]

¶2 In November 2005, Ruslan Benyaminov moved to withdraw his 1997 guilty plea to third degree theft in the

[1] *State v. Robinson*, 104 Wn. App. 657, 667, 17 P.3d 653 (2001) (internal quotation marks omitted) (quoting *State v. Duvall*, 86 Wn. App. 871, 875, 940 P.2d 671 (1997)).

[2] *Douchette v. Bethel Sch. Dist. No. 403*, 117 Wn.2d 805, 812, 818 P.2d 1362 (1991) (quoting *Hosogai v. Kadota*, 145 Ariz. 227, 231, 700 P.2d 1327 (1985)).

King County District Court.[3] Here, he fails in his burden to show his untimely collateral attack on the 1997 judgment and sentence based on that plea equitably tolled the one-year bar of RCW 10.73.090. We reverse the decision of the superior court, which reached a contrary conclusion, and reinstate the decision of the district court, dismissing his motion as untimely.

¶3 The city of Bellevue (City) charged Benyaminov with third degree theft in 1997. On September 22, 1997, Benyaminov, represented by counsel and aided by an interpreter, pleaded guilty to that charge in King County District Court, Bellevue Division. He received a 12-month deferred sentence.

¶4 Benyaminov received lawful permanent resident status in the United States in 1998.[4]

¶5 In 1999, the district court modified his deferred sentence to a suspended sentence with conditions.[5] In 2001, the court closed his case.

¶6 In April 2005, Benyaminov was convicted of first degree extortion in King County Superior Court. Shortly thereafter, the Immigration and Naturalization Service (INS) began removal proceedings to deport Benyaminov on the basis that he had been convicted of a theft offense for which a term of at least one year was imposed.[6]

¶7 In June 2005, the court denied Benyaminov's motion to modify his district court sentence for third degree theft from 365 days to 364 days. In August 2005, Benyaminov requested from the district court a copy of the case records from the 1997 prosecution for third degree theft.

---

[3] Clerk's Papers at 2, 13.

[4] Clerk's Papers at 81.

[5] It appears that the Immigration and Naturalization Service used January 1999 as the date of his conviction for theft in King County District Court, despite the fact that his plea of guilty occurred in 1997.

[6] Clerk's Papers at 5.

¶8 King County district courts retain case files for three years after final disposition.[7] Records from Benyaminov's case were destroyed in accordance with this retention schedule. Thus, the only records available at the time of his request were copies of the district court dockets from his case. These are in the record before us.

¶9 In November 2005, Benyaminov moved to vacate his 1997 guilty plea.[8] He based his motion primarily on the allegation that he was not warned of the immigration collateral consequence of possible deportation, as required by RCW 10.40.200, when he entered his plea to third degree theft in 1997. The district court denied the motion as untimely. On RALJ appeal, the superior court reversed.

¶10 We granted the City's motion for discretionary review.[9]

## EQUITABLE TOLLING

¶11 The City argues that the superior court committed legal error by applying equitable tolling in this case, allowing Benyaminov to collaterally attack his 1997 conviction for third degree theft. We agree.

¶12 "Equitable tolling 'permits a court to allow an action to proceed when justice requires it, even though a statutory time period has nominally elapsed.' "[10] " 'Appropriate circumstances generally include "bad faith, decep-

---

[7] RCW 40.14.070(1)(b) authorizes the destruction of public records when certain processes are followed. In pertinent part, the statute states, "A local government agency, as an alternative to submitting lists, may elect to establish a records control program based on recurring disposition schedules recommended by the agency to the local records committee . . . . [T]he schedule shall constitute authority for the local government agency to destroy the records listed thereon, after the required retention period, on a recurring basis until the schedule is either amended or revised by the committee."

[8] Clerk's Papers at 65-73.

[9] RAP 2.3(d)(3) provides, "Discretionary review of a superior court decision entered in a proceeding to review a decision of a court of limited jurisdiction will be accepted only . . . [i]f the decision involves an issue of public interest which should be determined by an appellate court . . . ."

[10] *Robinson*, 104 Wn. App. at 667 (quoting *Duvall*, 86 Wn. App. at 874).

tion, or false assurances by the defendant, and the exercise of diligence by the plaintiff." ' "[11] " 'Courts typically permit equitable tolling to occur only sparingly, and should not extend it to a "garden variety claim of excusable neglect." ' "[12]

¶13 The case authority applying this doctrine is instructive. For example, in *State v. Duvall*,[13] the court of appeals concluded that the 60-day time limit to determine restitution was equitably tolled. There, the trial court had justifiably relied on a false assurance that the defendant had agreed to a restitution amount and thus waived his presence in the first restitution hearing. Because the defendant was not prejudiced by the delay of conducting a second restitution hearing, and the State acted with due diligence and in good faith, it was appropriate to apply the doctrine.

¶14 Similarly, in *In re Personal Restraint of Hoisington*,[14] Division Three of this court applied the doctrine to toll the one-year time limit of RCW 10.73.090. There, Hoisington pleaded guilty under an agreement that incorrectly stated that the charged crime was a class B felony rather than a class A felony. Because of the mutual misunderstanding, the appropriate remedy was to grant Hoisington a choice between specifically enforcing the agreement or withdrawing the guilty plea. Hoisington had raised the issue of specific enforcement on direct appeal, but the court failed to address the claims. Because Hoisington acted with due diligence and the court was at fault for not addressing his claims on appeal, the *Hoisington* court concluded that the one-year time bar should be equitably tolled.

■ ¶15 The state supreme court has also considered the doctrine in an action for unlawful discrimination. In

---

[11] *Id.* (quoting *Duvall*, 86 Wn. App. at 875 (quoting *Finkelstein v. Sec. Props., Inc.*, 76 Wn. App. 733, 739-40, 888 P.2d 161 (1995))).

[12] *Id.* (quoting *Duvall*, 86 Wn. App. at 875 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990))).

[13] 86 Wn. App. 871, 940 P.2d 671 (1997), *review denied*, 134 Wn.2d 1012 (1998).

[14] 99 Wn. App. 423, 993 P.2d 296 (2000).

*Douchette v. Bethel School District No. 403*,[15] the plaintiff failed to timely commence an action for unlawful discrimination but sought equitable tolling of the statute of limitations. The supreme court set forth factors that courts should consider in balancing the equities between the parties under the facts of a particular case. Quoting the Arizona Supreme Court, our supreme court stated, " 'Equitable tolling is appropriate when it would effectuate: 1) the policies underlying the statute, and 2) the purposes underlying the statute of limitations.' "[16] Applying these factors to the case before it, our supreme court stated the important policies of the antidiscrimination statutes. But it held under the facts of that case that

> [t]he hardship to be imposed upon the District is the prejudice arising from the fact that 3 years have elapsed since the events at issue occurred. Witnesses may no longer be available, memories have faded, and relevant evidence may no longer be obtainable. Therefore, equitable grounds do not exist which justify a tolling of the statutes of limitations for Douchette's discrimination claims.[17]

¶16 Here, the relevant statute of limitations for Benyaminov's collateral attack on the 1997 judgment is RCW 10.73.090. It provides in pertinent part:

> No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed ***more than one year after the judgment becomes final*** if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.
>
> . . . For the purposes of this section, "collateral attack" means any form of postconviction relief other than a direct appeal . . . includ[ing] . . . a motion to withdraw guilty plea . . . .[18]

¶17 It is undisputed that Benyaminov's November 2005 motion to vacate is a collateral attack, as defined by this

---

[15] 117 Wn.2d 805, 812-13, 818 P.2d 1362 (1991).

[16] *Id.* at 812 (quoting *Hosogai*, 145 Ariz. at 231).

[17] *Id.* at 813.

[18] RCW 10.73.090(1)-(2) (emphasis added).

statute, on the September 1997 judgment following his plea to third degree theft. Likewise, no one disputes that this motion comes more than eight years after the judgment and sentence in that case.

¶18 The King County District Court, Bellevue Division, made a discretionary determination by denying his motion as untimely. On RALJ appeal, the superior court reversed, ruling as follows:

> Equitable tolling applies in this case under *State v. Littlefair*. Once the appellant states that he was not informed of immigration/removal consequences then it is the City of Bellevue's burden to produce the written acknowledgement of immigration consequences required by RCW 10.40.200. No document has been produced. The guilty plea is withdrawn and the case is remanded to district court for trial.[19]

¶19 The question before us is whether this record contains any evidence to support a claim for equitable tolling of this statute, as the superior court decided. We conclude there is no such evidence.

¶20 Benyaminov's declaration supporting his motion states, "To the best of my recollection, I was never apprised as to the potential immigration consequences of my plea, nor did I sign any statements to that effect."[20]

¶21 Nothing in this declaration evidences any "bad faith, deception, or false assurances" by the City or anyone else, as the cases require. Moreover, the copy of the district court docket that Benyaminov also submitted in support of his motion to vacate does not evidence any of these elements of equitable tolling. In short, this record is devoid of any evidence that would support equitable tolling of RCW 10.93.070 beyond its one-year limit.

¶22 As the supreme court stated in *Douchette*, the factors that courts should consider in balancing the equities between the parties under the facts of a particular case do

---

[19] Clerk's Papers at 179 (RALJ Appeal Decision).

[20] Clerk's Papers at 117.

not favor Benyaminov. Here, the policy of the statute on which he relies is to provide a remedy to those who are not advised of the collateral consequence of deportation when pleading to criminal offenses. But this policy is outweighed by that underlying RCW 10.73.090—finality of judgments. As in *Douchette*, a long period of time, more than eight years, has passed since the events in question. Benyaminov pleaded guilty to third degree theft in September 1997. He moved to set aside that plea in November 2005, more than eight years after his plea. The record indicates that the district court judge involved in his case is deceased. And there is nothing in this record to indicate that either Benyaminov's defense counsel at that time or the deputy prosecuting attorney who handled the case have any light to shed on the material issues here. Applying these principles to this case, we conclude that this record falls short of establishing a case for equitable tolling of RCW 10.73.090.

¶23 At oral argument, Benyaminov claimed that the record before us fails to show he was warned of potential adverse immigration consequences at the time of his 1997 plea to third degree theft. Specifically, he points to RCW 10.40.200(2), which provides:

Prior to acceptance of a plea of guilty to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall determine that the defendant has been advised of the following potential consequences of conviction for a defendant who is not a citizen of the United States: Deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. A defendant signing a guilty plea statement containing the advisement required by this subsection shall be presumed to have received the required advisement. If, after September 1, 1983, the defendant has not been advised as required by this section and the defendant shows that conviction of the offense to which the defendant pleaded guilty may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the

defendant to withdraw the plea of guilty and enter a plea of not guilty. ***Absent a written acknowledgement by the defendant of the advisement required by this subsection, the defendant shall be presumed not to have received the required advisement.***[21]

He argues that the absence of a written acknowledgement that he was advised in accordance with the requirements of this statute supports equitable tolling of the one-year bar of RCW 10.73.090. This argument is unpersuasive.

¶24 First, Benyaminov ignores the obvious—that the destruction of the court files pursuant to the records retention policy of the district court does not prove that no acknowledgement ever existed, nor does it prove the contents of any destroyed plea documents. We simply do not know whether his case records ever contained the required written acknowledgement. Yet, he would have us believe that the legislature intended that the destruction of records—whether due to a records retention policy, fire, or natural disaster—requires setting aside his guilty plea under the circumstances of this case.

¶25 Second, and more importantly, it is difficult to see why the absence of the written acknowledgement demonstrates any of the required elements for equitable tolling: "bad faith, deception, or false assurances by [anyone]." He does not argue that either the existence of the records retention policy or its implementation in this case fulfills any of the necessary elements that he must prove to establish equitable tolling.

¶26 Benyaminov and the superior court, on RALJ appeal, relied on *State v. Littlefair*[22] to support equitable tolling in this case. That reliance is misplaced.

¶27 There, Division Two of this court equitably tolled RCW 10.73.090. The court concluded that Littlefair's evidence proved that he lacked knowledge of possible immi-

---

[21] (Emphasis added.)

[22] 112 Wn. App. 749, 51 P.3d 116 (2002), *review denied*, 149 Wn.2d 1020 (2003).

gration consequences at the time of his plea due to a "bizarre series of events" and the mistakes of others.[23]

¶28 Littlefair was a resident alien who moved to withdraw his guilty plea to a drug charge more than two years after the court entered his plea and sentence.[24] Although Littlefair signed a plea form containing the required immigration consequences, he argued he did not receive the required advisement because of mistakes by his attorney, the court, and the INS.[25] The evidence showed that it was his attorney's practice not to inquire about a defendant's citizenship status if the person he represented was not a person of color or did not have a Hispanic surname.[26] The attorney assumed Littlefair was a United States citizen and did not inform him of any deportation consequences.[27] His attorney failed to inquire about his citizenship and also struck several paragraphs of the plea form by placing Xs over the section numbers, including the paragraph that contained the warning of immigration consequences, contrary to instructions on the written plea form.[28] Littlefair did not think the paragraph applied to him so he did not read it.[29]

¶29 The court accepting his plea also failed to note that the section had been improperly stricken.[30] Neither Littlefair nor the judge initialed the stricken portions as required by the plea form.[31]

¶30 In addition, the INS inexplicably waited more than two years before notifying him that he was subject to

[23] *Id.* at 763.

[24] *Id.* at 755.

[25] *Id.* at 762.

[26] *Id.* at 755.

[27] *Id.*

[28] *Id.* at 754, 762.

[29] *Id.* at 762.

[30] *Id.*

[31] *Id.* at 755.

deportation for that conviction.[32] Notwithstanding the one-year bar that generally applies to collateral attacks, the court concluded that equitable tolling applied, allowing the claim to be heard.

¶31 Here, there is no similar record. Benyaminov fails to identify any mistakes by the City or his attorney that affected his plea. Likewise, he fails to offer a copy of his plea form that he contends omitted the information regarding the possible collateral consequence of deportation. Instead, he relies solely on the absence of that form from the remaining district court records and a declaration that he does not recall being advised of the collateral consequence of deportation. He fails to offer any declaration from his then counsel that provides any information to support bad faith, deception, or false assurances by the City.

¶32 We note in passing that the City has also failed to fill the void to oppose the assertions of Benyaminov. For example, it fails to provide any declaration from the deputy prosecuting attorney who handled the 1997 plea to show what plea form was generally used then. Likewise, there is nothing from that deputy prosecuting attorney's file showing the plea form used in this specific case.

¶33 Nevertheless, the absence of a showing by Benyaminov of any of the elements of equitable tolling is fatal to his claim. Equitable tolling does not extend the one-year bar of RCW 10.73.090 to Benyaminov's collateral attack on the 1997 judgment on his plea to third degree theft.

## STATUTE OF LIMITATIONS

¶34 Benyaminov urges us to affirm the superior court's order on RALJ appeal on alternative grounds that both lower courts rejected. Specifically, he argues that his November 2005 motion was timely because his 1997 judgment cannot be "valid on its face," as RCW 10.73.090(1) requires. We disagree.

---

[32] *Id.* at 762-63.

¶35 No collateral attack on a judgment and sentence, including a motion to withdraw a guilty plea, may be brought more than one year after the judgment becomes final if the judgment and sentence is valid on its face.[33] The petitioner has the burden to show that the judgment and sentence is not "valid on its face" under RCW 10-.73.090(1).[34] A judgment and sentence may not be valid on its face due to a constitutional or nonconstitutional defect.[35] " '[I]nvalid on its face' means the judgment and sentence evidences the invalidity without further elaboration."[36] The documents signed as part of a plea agreement may be used to determine the validity of the judgment and sentence.[37] Our supreme court has made clear that "[t]he question is not . . . whether the plea documents are facially invalid, but rather whether the judgment and sentence is invalid on its face."[38]

¶36 Analysis of Benyaminov's timeliness claim requires consideration of three statutes: RCW 10.73.090, RCW 10.73.100, and RCW 10.40.200(2). RCW 10.73.090 provides in pertinent part:

> No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed *more than one year after the judgment becomes final if the judgment and sentence is valid on its face* and was rendered by a court of competent jurisdiction.[39]

RCW 10.73.100 provides:

---

[33] RCW 10.73.090; *State v. King*, 130 Wn.2d 517, 530, 925 P.2d 606 (1996) (holding that defendant's motion to withdraw guilty plea was subject to RCW 10.73.090 statute of limitations and was time barred because no statutory exception to one-year time limit applied).

[34] *In re Pers. Restraint of Fuamaila*, 131 Wn. App. 908, 918, 131 P.3d 318 (2006).

[35] *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 866, 50 P.3d 618 (2002).

[36] *Id.*

[37] *Id.* at 866 n.2.

[38] *In re Pers. Restraint of Hemenway*, 147 Wn.2d 529, 533, 55 P.3d 615 (2002).

[39] RCW 10.73.090(1) (emphasis added).

The time limit specified in RCW 10.73.090 does not apply to a petition or motion that is based solely on one or more of the following grounds:

(1) Newly discovered evidence, if the defendant acted with reasonable diligence in discovering the evidence and filing the petition or motion;

(2) The statute that the defendant was convicted of violating was unconstitutional on its face or as applied to the defendant's conduct;

(3) The conviction was barred by double jeopardy under Amendment V of the United States Constitution or Article I, section 9 of the state Constitution;

(4) The defendant pled not guilty and the evidence introduced at trial was insufficient to support the conviction;

(5) The sentence imposed was in excess of the court's jurisdiction; or

(6) There has been a significant change in the law, whether substantive or procedural, which is material to the conviction, sentence, or other order entered in a criminal or civil proceeding instituted by the state or local government, and either the legislature has expressly provided that the change in the law is to be applied retroactively, or a court, in interpreting a change in the law that lacks express legislative intent regarding retroactive application, determines that sufficient reasons exist to require retroactive application of the changed legal standard.

¶37 The third statute to consider is RCW 10.40.200(2), the statute on which Benyaminov bases his argument that his motion was timely. That statute provides:

Prior to acceptance of a plea of guilty to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall determine that the defendant has been advised of the following potential consequences of conviction for a defendant who is not a citizen of the United States: Deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. A defendant signing a guilty plea statement containing the advisement required by this subsection shall be presumed to have received the required advisement. If,

after September 1, 1983, the defendant has not been advised as required by this section and the defendant shows that conviction of the offense to which the defendant pleaded guilty may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty and enter a plea of not guilty. Absent a written acknowledgement by the defendant of the advisement required by this subsection, the defendant shall be presumed not to have received the required advisement.[40]

¶38  Neither of the two lower courts were persuaded that Benyaminov's motion was timely. Neither are we.

■  ¶39  A cardinal principle of statutory construction is that our first duty is to determine the legislature's intent.[41] We determine that intent from a plain reading of the statutes in question.[42] If a statute's meaning is plain on its face, we must give effect to that plain meaning.[43]

■  ¶40  The primary statutes to consider for Benyaminov's collateral attack on the 1997 judgment are RCW 10.73.090 and RCW 10.73.100. The latter statute lists exceptions to the one-year bar of the former statute. The legislature could have included RCW 10.40.200 among the exceptions to the one-year time limit of RCW 10.73.090. It did not do so. Thus, the legislature's intent is clear that the provisions of RCW 10.40.200 do not extend the one-year bar of RCW 10.73.090.

¶41  The only remaining argument to the one-year bar of RCW 10.73.090 is Benyaminov's claim that the 1997 judgment for third degree theft is not "valid on its face," as stated in RCW 10.73.090(1).

---

[40] RCW 10.40.200(2).

[41] *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

[42] *Id.* at 9.

[43] *Id.* at 9-10.

■ ¶42 The cases construing RCW 10.73.090 all require some showing of the facial invalidity of the judgment itself.[44] The mere invalidity of the plea agreement itself, without more, is insufficient to show invalidity of the judgment.[45]

■ ¶43 As we have already observed, Benyaminov fails to show that the 1997 judgment is invalid on its face because he fails to present either the original judgment or a copy of it. This lack of evidence is fatal to his claim that the judgment is not "valid on its face," as the statute requires him to show in order to avoid the one-year bar for his collateral attack on that judgment.

¶44 We hold that Benyaminov's 2005 collateral attack on his 1997 judgment for third degree theft is time-barred by RCW 10.73.090.

¶45 We reverse the decision of the superior court on RALJ appeal and reinstate the decision of the district court denying the motion as untimely.

DWYER, A.C.J., and LAU, J., concur.

Review denied at 165 Wn.2d 1020 (2009).

---

[44] "Invalid on its face" means the judgment and sentence evidences the invalidity without further elaboration. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 866-67, 50 P.3d 618 (2002); *In re Pers. Restraint of Stoudmire*, 141 Wn.2d 342, 353, 5 P.3d 1240 (2000); *In re Pers. Restraint of Thompson*, 141 Wn.2d 712, 718, 10 P.3d 380 (2000). The court in *Stoudmire* and *Thompson* held that documents signed as part of a plea agreement may be considered in determining facial invalidity when those documents are relevant in assessing the validity of the judgment and sentence. Thus, in *Stoudmire*, the court held the one-year bar did not apply where the plea documents showed that some charges were filed after the statute of limitations had run, and thus showed that the judgment and sentence was invalid. *Stoudmire*, 141 Wn.2d at 354. Similarly, in *Thompson*, the plea documents showed that the petitioner had been charged with an offense that did not become a crime until nearly two years after the offense was committed, and thus those documents showed the judgment and sentence was invalid on its face. *Thompson*, 141 Wn.2d at 719.
*Hemenway*, 147 Wn.2d at 532.

[45] *Id.* at 533 & n.2.