**In re Burnett William TODD, d/b/a Tri-Ad Investments, City View Business Park, Todd's Ice Cream, Debtor.**

**Bankruptcy No. 87–03547.**

United States Bankruptcy Court, D. South Carolina.

Aug. 18, 1989.

Clinch H. Belser, Jr., Belser, Baker, Barwick, Ravenel & Bender, Columbia, S.C., for movant/Doug Darnell.

David Duncan, Rock Hill, S.C., for prospective purchaser Diane Tate.

James Cassidy, Greenville, S.C., for trustee.

ORDER

WILLIAM THURMOND BISHOP,
Bankruptcy Judge.

This matter came before the court on July 12, 1989, upon a motion to reconsider and amend judgment and for relief from judgment filed by Douglas R. Darnell (Darnell). Based upon the record in the case, the stipulations of fact, the evidence presented, and the arguments of counsel, this court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. This is a Chapter 7 bankruptcy proceeding involving an individual. The debtor owned, among other things, an interest in a two-person partnership known as Todd and Darnell and a stock interest in Southeastern Foods, Incorporated. The trustee decided to sell these interests as a package, inasmuch as the partnership owned and leased to the corporation the corporation's plant in West Columbia, South Carolina.

2. The trustee negotiated a private sale of the package for $4,000.00 to Darnell, the other member of the partnership. The sale of the partnership interest and the stock as package was a reasonable and proper approach by the trustee, particularly since the partnership had received written notice from its mortgage company that the partnership was in default and that foreclosure proceedings were imminent.

3. On or about February 22, 1989, the trustee gave notice of the private sale to Darnell on the terms specified above.

4. The debtor filed an objection and a hearing was held on May 10, 1989, at which competitive bidding ensued, and a high bid of $8,000.00 was submitted by one Diane B. Tate (Tate).

5. At the aforesaid hearing, Darnell was present as an observer but was not represented by counsel.

6. Although counsel for the trustee told Darnell prior to the hearing that he should be ready for anything, including a public auction since past hearings involving this particular debtor had resulted in some difficulties, Darnell as a layman without coun-

sel was, nevertheless, surprised by and not prepared for an auction.

7. The trustee did not have actual knowledge of the provisions of the partnership agreement for Todd and Darnell, although he may be deemed to have had constructive notice thereof.

8. No one presented to the court at the May 10 hearing the provisions of the partnership agreement for the Todd and Darnell partnership.

9. Paragraph 11(b) of the partnership agreement prohibits the sale or transfer of a partner's interest without the partner's interest first being offered for sale to the partnership and the other partners, with notice in writing of the proposed sale price and terms being given to the partnership and delivered to all the non-selling partners. The non-selling partners have a period of thirty days to elect to buy at the proposed price and fifteen more days to pay.

10. Based on the foregoing, this court finds as a fact that its determination on May 10 to proceed without considering, or giving effect to, the provisions of paragraph 11(b) of the partnership agreement was entered by mistake, inadvertence, surprise, or excusable neglect, and this court's judgment later filed June 19, 1989 was also the product of the same mistake, inadvertence, surprise, or excusable neglect.

11. Darnell timely exercised his right of first refusal and gave notice of his election to purchase the interest on the same terms that the trustee was authorized to sell to Diane Tate. Darnell also timely tendered in full the $8,000.00 purchase price to the trustee.

12. The trustee has available to the estate two sources of the $8,000.00 purchase price. Therefore, the estate will not suffer a financial loss if the trustee is ordered to transfer the partnership share-stock package to Darnell, assuming Tate does not raise her bid as hereinafter set forth.

13. Tate will not suffer any loss if this court orders the sale of the partnership share-stock package to Darnell, because the trustee can refund to her in full all amounts she has paid or may pay to the trustee.

14. This court has observed the association between Mr. Todd and Tate in the proceedings in the court and is fully aware of the strained relationships between Darnell and Mr. Todd.

15. This court is aware that the Todd and Darnell partnership is a two-person partnership and finds that Darnell has a legitimate interest in the identity of his partner, which is worthy of protection by way of the protective provisions of paragraph 11(b) of the partnership agreement.

## CONCLUSIONS OF LAW

1. Bankruptcy Rule 6004 requires that notice be given of a proposed sale of property not in the ordinary course of business.

2. The particular proposed sale shall be specified in the notice, and notice of a proposed private sale is not proper notification of a sale by public auction. Bankruptcy Rule 2002(c)(1) provides that the terms and conditions of any sale, whether private or public, must be included in the notice.

3. Local bankruptcy rule M-12 requires that anyone objecting to a proposed sale give notice of the objection by serving all parties in interest "not later than five days prior to the hearing date." Darnell, who was a party in interest, should have received formal notice of the debtor's objection, which he did not, although he was aware that a public auction might take place.

4. The aforesaid bankruptcy rules 6004 and 2002(c)(1) are clear in their terms and cannot be ignored or violated for the sake of expediency. They cannot be treated to the detriment of Darnell, who proceeded as a layman and was one with a vital interest in the two-man Todd and Darnell partnership.

5. Notwithstanding the contentions of Tate, Section 541(c)(1)(A) of the Bankruptcy Code does not invalidate completely the protective provisions of the partnership agreement. A faithful reading of Section 541(c)(1) discloses that this sec-

tion deals only with the concept that "an interest of the debtor in property becomes property of the estate" notwithstanding such protective provisions.

6. Section 541(c)(1)(A) is not intended to expand the debtor's rights against others more than they existed at the commencement of the case. *State of California v. Farmers Markets, Inc., (In Re Farmers Markets, Inc.)* 792 F.2d 1400, 15 C.B.C.2d 93 (9th Cir.1986). This section is intended by Congress to eliminate barriers to the transfer of property to the estate, not to void any restrictions on the transfer of the property from the trustee, as successor to the debtor, to third parties. *Calvert v. Bomgards Creameries, (In re Shauer)*, 62 B.R. 526, 15 C.B.C.2d 191 (Bankr.D.Minn. 1986).

7. It is very appropriate, and in fact required of the trustee and the court, to liquidate the partnership interest in accordance with the protective provisions of the partnership agreement. *In Re Baquet*, 61 B.R. 495, 15 C.B.C.2d 772 (Bank.D.Mont. 1986). The Code does not permit the trustee to ignore the restrictive transfer provisions. *In Re Baquet, supra.*

8. Section 363 of the Bankruptcy Code affirmatively requires protection of Darnell's interest.

9. This court should not give the trustee the right to sell the subject property without honoring Darnell's right of first refusal, since the right is not available to the debtor as this would violate one of the fundamental precepts of bankruptcy law, that a trustee should not have rights to property which the debtor does not have. *Wright v. Hovis, (In Re Wright)* 39 B.R. 623 (Bankr.D.S.C.1983).

10. The protective provisions of paragraph 11(b) of the partnership agreement are enforceable under South Carolina Law. Section 33–41–510 of the South Carolina Code (1976) expressly gives partners the power to make agreements between them as they relate to the partnership.

11. Subsection 7 of § 33–41–510 of the South Carolina Code (1976) is more restrictive than paragraph 11(b) of the Todd and Darnell partnership agreement, in that this statute authorizes a partner to have a complete veto power over the admission of a new partner.

12. Darnell's position that he has the right under the partnership agreement and South Carolina law to match the price offered by Tate is valid and enforceable by this court.

13. Tate's assertion that § 33–41–510(5) of the S.C. Uniform Partnership Act, mandating dissolution of the partnership upon the filing by a partner in bankruptcy and thereby causing the partnership agreement (upon which Darnell bases his claim) to become unenforceable, is not supported by the better reasoned cases. These cases appear to conclude that a partnership is not dissolved because of the filing of bankruptcy by one of the partners or of the partnership itself. These cases "rely on the supremacy of the federal bankruptcy law when faced with an inconsistent state-law provision as well as on § 365(e)(1)(B) of the Bankruptcy Code to override the clear directive of state law". McBride, "Bankruptcy and Partnership Dissolution: Making a federal case", 1988 *Norton Bankruptcy Law Advisor* 10 (October 1988), citing *In Re Corky Foods Corp.*, 85 B.R. 903 (Bankr.S.D.Fla.1988); *In re Safren*, 14 B.C.D. 1261, 65 B.R. 566, 16 C.B.C.2d 315 (Bankr.C.D.Cal.1986).

14. Although the partnership property is under the threat of foreclosure and inasmuch as the trustee originally determined it appropriate to sell the partnership interest-stock package to Darnell for the price of $4,000.00, this court finds and concludes that a sale for $8,000.00 may not in fact represent the value of the debtor's interest as he, through Tate, may have been willing to bid and pay more for this asset at the auction had it become necessary.

15. Tate should be given a period of ten days from this Order to raise her bid if she desires, *provided* her bid submitted to the trustee is accompanied with cash or certified funds in the amount her new bid exceeds the initial bid of $8,000.00.

16. If no additional bid with security is submitted by Tate to the trustee, this court finds that Darnell is entitled to have the trustee convey the partnership share-stock package to him for $8,000.00 as previously tendered and Tate should be refunded her $8,000.00.

17. If an additional bid with security is submitted by Tate, Darnell shall have a period of 30 days to elect if he wishes to purchase the partnership-stock package for the new bid amount and if so 15 days after electing to pay. Upon payment to the trustee, the trustee shall convey the partnership share-stock package to him and refund to Tate all monies she has heretofore paid.

18. It is not necessary to reopen the bidding at a public auction and since there were no additional parties objecting to the trustee's notice at the initial hearing, no other parties should be permitted to bid.

### ORDER

Therefore, in consideration of the foregoing findings of fact and conclusions of law, a judgment will be entered amending the prior judgment filed June 19, 1989, and providing at this time as follows:

*FIRST.* Tate shall have a period of ten (10) days from this Order to raise her bid if she desires, *provided* her new bid submitted to the trustee is accompanied with cash or certified funds in the amount her new bid exceeds the initial bid of $8,000.00.

*SECOND.* If no additional bid with security is submitted by Tate to the trustee, Darnell will be entitled to have, and the trustee is ordered to convey and transfer to him, the partnership share-stock package for $8,000.00 previously paid and Tate shall be refunded her $8,000.00.

*THIRD.* If an additional bid with security is submitted by Tate, Darnell shall have a period of thirty (30) days to elect if he wishes to purchase the partnership stock package for the new amount and if he so elects, he shall have fifteen (15) days thereafter to pay. Upon payment, the trustee is ordered to convey the partnership share-

stock package to him and to refund Tate all monies she has paid the trustee.

*FOURTH.* No other parties will be permitted to bid since there were no other parties objecting to the trustee's notice or bidding at the hearing on May 10, 1989.