In re Martin H. NIZNY, Kay K. Nizny, Debtors.

Harrison H. WEAVER, Plaintiff,

v.

Martin H. NIZNY, Defendant.

Bankruptcy No. 3–93–30282.
Adv. Pro. No. 93–30176.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

March 21, 1994.

John D. Squires, Dayton, OH, for Country Square Properties, an Ohio General Partnership and Harrison H. Weaver.

Ira Rubin, Goldman, Rubin & Shapiro, Dayton, OH, for debtor-in-possession.

## DECISION FINDING THAT THE PARTNERSHIP OF "COUNTRY SQUARE PROPERTIES" DID NOT DISSOLVE AUTOMATICALLY UPON THE FILING OF DEBTOR'S CHAPTER 11 PETITION IN BANKRUPTCY; ORDER CONTINUING PROCEEDINGS

WILLIAM A. CLARK, Chief Judge.

This matter is before the court upon the Defendant's motion to dismiss the Plaintiff's complaint for failure to state a claim. The court has jurisdiction by virtue of 28 U.S.C. § 1334 and the standing order of reference in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(O)—proceedings affecting the liquidation of the assets of the estate.

### PROCEDURAL POSTURE

#### Plaintiff's Complaint

Since May, 1985, and pursuant to a written partnership agreement, Plaintiff Harrison H. Weaver and Defendant Martin H. Nizny ("Debtor") have been partners in a partnership named "Country Square Properties."[1] The business of the partnership is to purchase, operate and sell various commercial properties, and on the date the Debtor filed his chapter 11 petition in bankruptcy the partnership had title to eleven commercial properties.

Plaintiff alleges that 1) the filing of the Debtor's chapter 11 petition on January 27, 1993, dissolved the partnership under Ohio Rev.Code § 1775.30(E);[2] 2) the Debtor's bankruptcy filing was in contravention of the partnership agreement under Ohio Rev.Code § 1775.37(B); and 3) pursuant to Ohio Rev. Code § 1775.37(B)(2)[3] Plaintiff is entitled to continue the business activities of the partnership and terminate the Debtor's ownership interests in the partnership by paying the Debtor the value of his partnership interest. Plaintiff asserts that the amount of the partnership's liabilities exceed the fair value of its assets.

Plaintiff requests the court to:

1) declare the partnership to have been dissolved as of January 27, 1993,

2) determine the value, if any, of the Debtor's interest in the partnership's assets on the date of the partnership's dissolution, and

---

1. Prior to 1985, the parties operated the partnership under the name of "Country Square Shopping Center" for a period of 12 years.

2. According to Ohio law, dissolution of a partnership is caused by "the bankruptcy of any partner or the partnership." Ohio Rev.Code § 1775.30(E).

3. Ohio Rev.Code § 1775.37(B) provides that:
(B) When dissolution is caused in contravention of the partnership agreement the rights of the partners shall be as follows:
(1) Each partner who has not caused dissolution wrongfully shall have:
(a) All the rights specified in division (A) of this section;
(b) The right, as against each partner who has caused the dissolution wrongfully, to damages for breach of the agreement.
(2) The partners who have not caused the dissolution wrongfully, if they all desire to continue the business in the same name, either by themselves or jointly with others, may do so, during the agreed term for the partnership and for that purpose may possess the partnership property, provided they secure the payment by bond approved by the court, or pay to any partner who has caused the dissolution wrongfully, the value of his interest in the partnership at the dissolution, less any damages recoverable under division (B)(1)(b) of this section, and in like manner indemnify him against all present or future partnership liabilities.
(3) A partner who has caused the dissolution wrongfully shall have:
(a) If the business is not continued under division (B)(2) of this section all the rights of a partner under division (A), subject to division (B)(1)(b) of this section;
(b) If the business is continued under division (B)(2) of this section the right as against his partners and all claiming through them in respect of their interests in the partnership, to have the value of his interest in the partnership as the damages caused to his partners by the dissolution, ascertained and paid to him in cash, or the payment secured by bond approved by the court, and to be released from all existing liabilities of the partnership; but in ascertaining the value of the partner's interest the value of the good will of the business shall not be considered.

3) authorize the Plaintiff to purchase the Debtor's interest in partnership assets for the greater of a) $2,500 or b) the value of the Debtor's interest as determined by the court.

### Defendant/Debtor's "Motion to Dismiss Plaintiff's Complaint"

The Debtor has moved the court to dismiss the Plaintiff's complaint under Fed.R.Civ.P. 12(b)(6) on the ground that it fails to state a claim upon which relief can be granted. Debtor's basic argument is that the partnership did not automatically dissolve upon the Debtor's filing of a chapter 11 petition in bankruptcy because Ohio's *ipso facto* dissolution of a partnership upon the filing of bankruptcy by a partner violates the Bankruptcy Code (11 U.S.C. § 365(e)(1)) and the Supremacy Clause of the United States Constitution.

### CONCLUSIONS OF LAW

■ The issue before the court is whether the chapter 11 filing of one general partner in a general partnership causes the dissolution of the general partnership. There is a split of authority on this issue, and although both positions have considerable merit, this court will follow those cases finding that a general partnership does not dissolve when one of the general partners files a petition for reorganization under chapter 11 of the Bankruptcy Code.[4]

The first rationale for finding that the parties' partnership has not been dissolved is based on statutory construction and public policy grounds set forth in the leading case of *In re Safren,* 65 B.R. 566, 570 (Bankr. C.D.Cal.1986):

> [T]he filing of a Chapter 11 case by or against a partner does not dissolve a general partnership. Such a dissolution was

not contemplated when section 31(5) [of the Uniform Partnership Act] was drafted in 1914, because no reorganization bankruptcy existed.[5] In addition, if a partner is to reorganize his business affairs, he should not be faced with an automatic dissolution of all partnerships in which he is a partner, with the administrative and tax complications resulting therefrom. The Court discerns no benefit under partnership law from the automatic dissolution of a partnership upon the filing of a Chapter 11 case by a partner. Thus the filing of the individual [partner] Chapter 11 cases did not dissolve the ... partnership.

*Accord: In re Hawkins,* 113 B.R. 315 (Bankr.N.D.Tex.1990); *In re Corky Foods,* 85 B.R. 903 (Bankr.S.D.Fla.1988). *Contra: Phillips v. First City, Texas—Tyler, N.A. (In re Phillips* ), 966 F.2d 926 (5th Cir.1992).

The second rationale supporting a nondissolution of the parties' partnership is based on § 365(c) and § 365(e) of the Bankruptcy Code, which deal with the assumption and rejection of executory contracts. Initially, the court notes that the courts are in agreement that partnership agreements are executory contracts. *In re Corky Foods Corp.,* 85 B.R. 903, 904 (Bankr.S.D.Fla.1988); *In re Sunset Developers,* 69 B.R. 710, 712 (Bankr.D.Idaho 1987); *In re Harms,* 10 B.R. 817, 821 (Bankr.D.Colo.1981). The question then becomes whether a partnership agreement is the type of executory contract that is *assumable* in bankruptcy.

Even though a contract is executory, "[u]nder Section 365(c) of the Bankruptcy Code ..., there are certain kinds of executory contracts which cannot be assumed." *In re Harms, supra,* 10 B.R. at 821.

> (c) The trustee may not assume or assign an executory contract ... of the debt-

---

**4.** The court specifically reserves the issue of whether a chapter 7 filing by a partner causes dissolution of a partnership.

**5.** "The Uniform Partnership Act was promulgated by the National Conference of Commissioners on Uniform State Laws in 1914, when the only kind of bankruptcy available was a liquidation similar to that available under Chapter 7 of the Bankruptcy Code today. Reorganization was first introduced into the Bankruptcy Code in 1933, in the middle of the Great Depression,

when Congress added section 77 to the Bankruptcy Act to permit the reorganization of railroads. Pub.L. No. 72–420, 47 Stat. 1474 (1933). In 1934 Congress authorized corporate reorganization in a lengthy section 207, Pub.L. No. 72–424, 48 Stat. 912 (1934), which was expanded into Chapters X through XIII in the Chandler Act of 1938. Act of June 22, 1938, Pub.L. No. 74–575, 52 Stat. 840 (1938)." *In re Safren,* 65 B.R. at 569.

or, whether or not such contract ... prohibits or restricts assignment of rights or delegation of duties, if—

>    (1)(A) applicable law excuses a party, other than the debtor, to such contract ... from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract ... prohibits or restricts assignment of rights or delegation of duties; and

>    (B such party does not consent to such assumption or assignment; ....

11 U.S.C. § 365(c).

Because of the nature of a partnership, it has been held that § 365(c) precludes assumption of a partnership agreement by a chapter 11 debtor in possession:

>    The partnership agreement creates a fiduciary relationship among the partners. It is a contract based on personal trust and confidence. The partners fiduciary character imposes upon the parties the duty of good faith and fair dealing and requires that none of the partners take unfair advantage. A partnership agreement is a contract based on personal trust and confidence, which cannot be assigned or assumed without consent of the parties.

>    . . . .

>    With regards to partnership activities, Idaho law excuses a partner from accepting performance from or rendering performance to an entity other than a partner without all the partners' consent. *A Debtor–in–Possession is a different legal entity than the debtor-partner.* Assignment of a partner's interest to a new entity merely entitles the assignee to receive the contract profits to which the assigning partner is entitled. The assignee is not entitled to management or voting rights. The Debtor–in–Possession is entitled only to the surplus or profits from the Partnership. *In re Sunset Developers, supra,* 69 B.R. at 713 (emphasis supplied).

*Accord: In re Harms, supra,* 10 B.R. at 822.

■ A different analysis of § 365(c), however, by Hon. Barbara J. Sellers, a bankruptcy judge in this court's district, persuades this court that § 365(c) does not preclude a debtor in possession from assuming an executory contract:

>    Section 362(a) of BAFJA [the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984)] amended 11 U.S.C. § 365(c)(1)(A) by substituting the phrase "an entity other than the debtor or the debtor in possession" for the words "the trustee." 11 U.S.C. § 365(c)(1)(A) (Supp. II 1985). The legislative history for this change provides:

>>    This amendment makes it clear that the prohibition against a trustee's power to assume an executory contract does not apply where it is the debtor that is in possession and the performance to be given or received under a personal service contract will be the same as if no petition had been filed because of the personal service nature of the contract.

>    H.R.Rep. No. 1195, 96th Cong., 2d Sess. § 27(b) (1980). This comment clearly indicates that Congress did not intend § 365(c)(1) to preclude assumption of an otherwise nonassignable personal service contract if the performance to be given or received "will be the same as if no petition had been filed." Rather, as the Trustee argues, *§ 365(c)(1) provides that a debtor in possession can assume a personal service contract that is nonassignable under state law as long as its performance is going to be the same as if no petition had been filed. In re Cardinal Industries, Inc.,* 116 B.R. 964, 979 (Bankr.S.D.Ohio 1990) (emphasis supplied).

This brings the court to the Debtor's contention that, even though a partner files a chapter 11 petition in bankruptcy, § 365(e)(1) prevents the *ipso facto* dissolution of a partnership under state law. Section 365(e)(1) provides that:

>    Notwithstanding a provision in an executory contract ... or in applicable law, an executory contract ... of the debtor may not be terminated or modified, and any right or obligation under such contract ... may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract ... that is conditioned on—

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title; or

(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

11 U.S.C. § 365(e)(1).

"Bankruptcy Code § 365(e)(1) recognizes the likelihood of a nondebtor's disaffinity for continuing a prepetition relationship with a party who has filed bankruptcy." *Breeden v. Catron (In re Catron)*, 158 B.R. 624, 628 (Bankr.E.D.Va.1992). Plaintiff maintains, however, that § 365(e)(1) is not applicable to all executory contracts, and § 365(e)(2) excuses him from accepting the Debtor's performance:

[§ 365(e)(1) ] does not apply to an executory contract ... of the debtor, whether or not such contract ... prohibits.or restricts assignment of rights or delegation of duties, if—

(A)(i) applicable law excuses a party, other than the debtor, to such contract ... from accepting performance from or rendering performance to the trustee or to an assignee of such contract ... whether or not such contract ... prohibits or restricts assignment of rights or delegation of duties; and

(ii) such party does not consent to such assumption or assignment;....

11 U.S.C. § 365(e)(2).

Again, this court finds the reasoning of Judge Sellers to be persuasive:

Section 365(e)(2), which is an exception to the *ipso facto* invalidation provided by § 365(e) generally, is meant to reflect the same philosophy. If the contract is neither assumable nor assignable under § 365(c), invalidating the *ipso facto* clause serves no purpose. Where the contract may be assumed, because assumption by a trustee on behalf of the estate results in the debtor's performance of the contract in a Chapter 11 case, invalidation of *ipso facto* clauses should be the rule, however, either under 11 U.S.C. § 365(e)(1) or by

application of the Supremacy Clause generally. A general partner which is eligible for Chapter 11 relief ... should not have the means for reorganization taken away because of *ipso facto* bankruptcy termination provisions either in executory contracts or in nonbankruptcy law. That result would harm the estate where assumption would benefit creditors without harm to the other party to the contract. *In re Cardinal Industries, Inc., supra,* 116 B.R. at 982.

■ Plaintiff relies on *In re Catron, supra,* which rejects Judge Sellers' analysis. In this court's opinion, *Catron* is heavily dependent on the conclusion that a prepetition entity and a debtor in possession are separate entities, and since a partnership agreement is essentially a personal services contract a debtor in possession is prevented from assuming a partnership agreement over the objection of non-debtor partners. 158 B.R. at 628. This court does not agree. Instead, this court concurs with Judge Sellers' statement that the separate entity theory is not applicable where "the entity performing the contract, should it be assumed, will be the same entity which was a party to the original contract." *In re Cardinal Industries, Inc., supra,* 116 B.R. at 981.

If there is a material change in the identity of the person rendering the performance under the contract, the identity of that person is an essential element of the contract, and the contract is nonassumable under applicable nonbankruptcy law, then the estate can not assume the contract. The reason for that result is that assumption other than by agreement may result in prejudicial harm to the nondebtor party. Where the ... assumption ... would not change the essential identity of the entity performing the services under the contract, the exception is not effective. In that situation the nondebtor party is not prejudiced, nor is his essential bargain affected by the assumption. The Chapter 11 filing, therefore, should not provide a fortuitous event which excuses the nondebtor party from further performance if that performance is beneficial to the estate and if the estate can otherwise meet the tests

for assumption. Certainly the nondebtor party should not be free to unilaterally terminate the estate's rights prior to its determination whether the contract will be assumed or rejected. The analysis would be different if an actual assignment to a separate third party were proposed or contemplated. *Id.*, at 982.

There is no indication in the instant case that in the event the Debtor assumes the partnership agreement there would be a material change in the identity of the person rendering performance under the partnership agreement. The court, therefore, finds that upon the filing of a partner's chapter 11 petition in reorganization § 365(e)(1) prevents an *ipso facto* dissolution of a partnership under state law. *Accord: In re Clinton Court,* 160 B.R. 57 (Bankr.E.D.Pa.1993); *In re Priestley,* 93 B.R. 253, 262 n. 9 (Bankr. D.N.M.1988); *In re Corky Foods,* 85 B.R. 903 (Bankr.S.D.Fla.1988); *In re Rittenhouse Carpet, Inc.,* 56 B.R. 131 (Bankr.E.D.Pa. 1985). *Contra: Breeden v. Catron (In re Catron),* 158 B.R. 624 (Bankr.E.D.Va.1992); *In re Sunset Developers,* 69 B.R. 710 (Bankr.D.Idaho 1987); *In re Harms,* 10 B.R. 817 (Bankr.D.Colo.1981).

█ In support of his position, Plaintiff also referred the court to its decision of *Rodeck v. Olszewski (In re Olszewski),* 124 B.R. 743, 747 (Bankr.S.D.Ohio 1991) in which this court stated:

> While the bankruptcy of any partner causes the dissolution of a partnership by virtue of Ohio Rev.Code § 1775.30, the partnership is not terminated upon dissolution. The partnership continues until a winding up of partnership affairs is completed. Ohio Rev.Code § 1775.29. Thus, the debtors did not acquire a direct interest in the real estate merely because the partnership dissolved; the real estate remains an asset of the partnership pending a winding up of the partnership.

Although this statement represents a correct restatement of the relevant Ohio statutes, it is not accurate within the context of chapter 11 reorganization proceedings wherein the debtor remains in possession. It is important to note, however, that the above statement was not the holding or the main focus of the case nor did it affect the outcome of the case. The object of the discussion was to point out that more than mere dissolution of a partnership (i.e., winding up) is required before partnership property is vested directly in a partner or his bankruptcy estate.

For the foregoing reasons this court finds that the partnership of Country Square Properties did not automatically dissolve upon the filing of the Debtor's chapter 11 petition for reorganization. At the present time, however, there is nothing in the record of this adversary proceeding indicating whether the Debtor intends to assume the partnership agreement nor whether the Debtor is able to comply with the requirements of § 365 regarding assumption. Therefore, it is hereby ORDERED that this adversary proceeding is *Continued* until the parties submit evidence that the matter of the Debtor's assumption of his partnership interest has been resolved in his main bankruptcy case.