

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-20-2002

# In Re Woskob

Precedential or Non-Precedential: Precedential

Docket No. 01-1482

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"In Re Woskob " (2002). *2002 Decisions.* Paper 591.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/591

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed September 20, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1482

IN RE: LEAH BETH WOSKOB,
        Debtor

ALEX WOSKOB; HELEN WOSKOB;
THE ESTATE OF VICTOR WOSKOB

v.

LEAH BETH WOSKOB,
        Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania

District Court Judge: The Honorable James F. McClure
(D.C. Nos: 00-cv-01264 & 00-cv-01265)

Argued on January 7, 2002

Before: MANSMANN,1 RENDELL, and FUENTES,
Circuit Judges.

(Opinion Filed: September 20, 2002)
_____

1. The Honorable Carol Los Mansmann participated in the oral
argument, but died before the opinion could be filed.


        STEVEN S. HURVITZ (Argued)
        McQuaide Blasko Schwartz Fleming
         & Faulkner, Inc.
        811 University Drive
        State College, PA 16801

         Counsel for Appellant

        DANIEL J. DUGAN (Argued)
        BRUCE BELLINGHAM
        Spector Gadon & Rosen, PC
        1635 Market Street, 7th Floor
        Philadelphia, PA 19103

         Counsel for Appellees

OPINION OF THE COURT

FUENTES, Circuit Judge:

Leah Woskob, the Debtor in bankruptcy, appeals from an
order of the District Court determining that she did not

timely exercise her option to purchase her late husband Victor's interest in their real estate partnership, the Woskob Legends Partnership (the "Legends Partnership"). Under the partnership agreement, Leah had 30 days from the date of an act of dissolution or 90 days from the death of a partner to exercise the option. She ultimately exercised it about two weeks after her husband died in an accident.

The Bankruptcy Court held that Leah had properly exercised the option. On appeal, the District Court reversed the Bankruptcy Court's decision, determining that the partnership had already been dissolved well before Victor's death by any one of the following three events: (1) Victor's exclusion of Leah from partnership proceeds; (2) Leah's exclusion of Victor from management and income during their pending divorce action; and (3) Victor's bankruptcy filing. Accordingly, the District Court held that Leah had not timely exercised her option to purchase Victor's interest.

We conclude that none of the three events cited by the District Court caused the dissolution of the partnership,

2

and that the partnership was dissolved only upon Victor's death. Thus, we will vacate the order of the District Court and will remand the case so that the District Court can properly determine, consistent with this opinion, whether Leah validly exercised her option to purchase Victor's interest in the partnership following his death.

I.

Leah and Victor Woskob formed the Legends Partnership in 1996 for purposes of constructing, owning, and operating the Legends, an apartment building in State College, Pennsylvania. Leah and Victor, who were then married, each held a 50% interest in the partnership under the terms of the Partnership Agreement. As partners, Leah and Victor retained A.W. & Sons, a business owned by Victor's parents, to construct and later manage the Legends property.

In January of 1997, Leah and Victor separated, and Leah filed for divorce. During the divorce proceedings, Victor prevented Leah from receiving any distributions from the Legends Partnership. However, on April 15, 1997, the Pennsylvania Court of Common Pleas of Centre County granted Leah's petition for special relief and awarded her the exclusive right to manage and derive income from the Legends. On June 20, 1997, Leah terminated the management agreement with A.W. & Sons and hired another management company. On that same day, Victor filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. He stated in the petition that he owned 50% of the partnership. Victor voluntarily withdrew the petition nine months later. The partnership tax returns for 1997 and 1998, both signed and filed by Leah, continued

to list both Victor and Leah as general partners of the Legends Partnership.

On January 12, 1999, Victor died in an automobile accident. In his will, he had named his four children as beneficiaries of his estate (the "Estate"). He had also named his parents, Alex and Helen Woskob (the "Woskobs"), as executors. Within fifteen days of Victor's death, Leah notified the Woskobs that she intended to dissolve the

Legends Partnership and to purchase Victor's interest in the partnership pursuant to Paragraph 19 of the Partnership Agreement, which states in relevant part:

> Buy-Sell on Death of Partner
>
> XIX. The surviving Partner has the option to dissolve the Partnership on the death of a Partner. The surviving Partner shall have the right within ninety (90) days from the date of death of the deceased Partner to purchase the interest of the deceased Partner in the Partnership and to pay to the personal representative of the deceased Partner the value of that interest as provided in Paragraph 18 of this Agreement. . . . The estate of the deceased Partner shall be obligated to sell his or her Partnership interest as provided in this Agreement. . . . If the surviving Partner does not elect to purchase the interest of the deceased Partner, the Partnership shall terminate.

App. at 2:327-28. Based on the written opinion of the partnership's accountant, Leah advised the Woskobs that Victor's interest was negative in the amount of $33,944 and, thus, that the Estate was not entitled to any payments for the purchase of Victor's partnership interest. The Woskobs opposed the sale of the Legends Partnership to Leah.

On April 16, 1999, Leah filed a complaint for declaratory judgment in the Common Pleas Court, seeking an order declaring that the Estate's interest in the partnership terminated because it had been purchased by Leah pursuant to the terms of the Partnership Agreement. The Woskobs filed a separate complaint in the same court on June 11, 1999, alleging that the partnership had been dissolved in 1997 prior to Victor's death in 1999. Accordingly, they requested the appointment of a receiver to wind up the affairs of the partnership, a complete accounting of the partnership's affairs, and the fixing of damages for amounts alleged to have been wrongfully taken from the partnership by Leah.

After Leah filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code, both actions were removed to the United States Bankruptcy Court for the

Middle District of Pennsylvania. The Woskobs contended that Leah's attempt to purchase Victor's interest after his death in 1999 was untimely because the Legends Partnership had already been dissolved in 1997 by any one of three events, including (1) Victor's alleged exclusion of Leah from partnership after the marital separation, (2) the order of the Court of Common Pleas granting Leah the exclusive right to manage and derive income from the Legends, and (3) Victor's bankruptcy filing. If the partnership had been dissolved in 1997, then Leah's attempt to purchase Victor's interest in 1999 would have been untimely pursuant to Paragraph 17 of the Partnership Agreement, which reads:

> Option to Purchase Terminated Interest
>
> XVII. On dissolution of the Partnership by the withdrawal or other act of a Partner, the remaining Partner, on written notice to the other Partner within thirty (30) days of the dissolution, may continue the Partnership business by purchasing the interest of the other Partner in the assets and goodwill of the Partnership. The remaining Partner shall have the option to purchase the interest of the withdrawing Partner by paying to this Partner or the Partner's personal representative the value of the interest determined as provided in Paragraph 18 of this Agreement.

App. at 2:327 (emphasis added).

On June 14, 2000, the Bankruptcy Court ruled in favor of Leah, finding that the partnership was dissolved only upon Victor's death in 1999, and that Leah properly exercised her option to purchase Victor's interest in the partnership.

The Estate filed notices of appeal in both cases with the United States District Court for the Middle District of Pennsylvania. The District Court disagreed with the Bankruptcy Court as to the date of dissolution, finding that any one of the three events cited by the Woskobs was sufficient to cause the dissolution of the partnership in 1997. Accordingly, the District Court held that Leah's attempt to exercise her option to purchase Victor's interest

5

in 1999 was untimely and reversed and remanded the two cases to the Bankruptcy Court.

Leah now appeals from the decision of the District Court.

II.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. S 158(a). We have jurisdiction under

28 U.S.C. SS 158(d) and 1291. Our standard of review over a district court's bankruptcy decision is the same as that exercised by the district court. See In re Continental Airlines, 125 F.3d 120, 128 (3d Cir. 1997) (citing Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 84 (3d Cir. 1988)). Accordingly, we review the bankruptcy court's factual findings only for clear error, but exercise plenary review over any legal determinations. See In re O'Dowd, 233 F.3d 197, 201-02 (3d Cir. 2000). Because Leah and Victor formed and managed the Legends Partnership in Pennsylvania, and because Pennsylvania was the partnership's principal place of business, we apply the law of Pennsylvania in determining the partnership's date of dissolution. See Restatement (Second) Conflict of Laws S 294 (1971).

III.

The Uniform Partnership Act (UPA), as adopted by Pennsylvania, defines the "dissolution" of a partnership as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on, as distinguished from the winding up, of the business." 15 Pa.C.S. S 8351. The timeliness of Leah's attempt to exercise her option to buy Victor's interest in the Legends Partnership under the Partnership Agreement depends upon the partnership's date of dissolution.

Dissolution can be caused by decree of court or automatically through operation of law. 15 Pa.C.S.SS 8353 (dissolution by operation of law) and 8354 (dissolution by decree of court). When dissolution occurs through operation of law and without the need for a judicial decree, the date of dissolution is the date of the first effective act of

6

dissolution. See Girard Bank v. Haley, 332 A.2d 443, 447 (Pa. 1975) (holding date of dissolution to be date of partner's expression of will to dissolve partnership, not date of partner's subsequent death). When a partnership is dissolved by decree of court, the date of dissolution is ordinarily the date upon which the court decrees the dissolution, unless the court specifies otherwise. See Scheckter v. Rubin, 36 A.2d 315, 315-16 (Pa. 1944).

Although no court ever decreed the dissolution of the Legends Partnership, there is no doubt that the partnership was eventually dissolved through operation of law. If the partnership was not dissolved before Victor's death, it was certainly dissolved upon his death under 15 Pa.C.S.S 8353, which provides that the "death of any partner" causes the dissolution of a partnership. 15 Pa.C.S. S 8353(4). The question before us is whether any other events had already served to dissolve the partnership through operation of law prior to Victor's death.

The Estate contends that three separate events, each of which occurred more than a year and a half before Victor's

death, were sufficient to dissolve the partnership. The first event was Victor's alleged exclusion of Leah from the partnership after the marital separation. Second was Leah's alleged exclusion of Victor after the Court of Common Pleas granted her petition for special relief. The third partnership-dissolving event, according to the Estate, was Victor's filing for bankruptcy in June 1997. For the reasons set forth below, we find that none of these three events caused the dissolution of the Legends Partnership.

A. The Exclusions

In finding that the alleged exclusions or expulsions from the partnership of Leah and then Victor were each sufficient to dissolve the Legends Partnership, the District Court observed that a "dissolution in these circumstances can be effected before a court ever gets involved, and a partnership can be immediately dissolved by a wrongful exclusion." App. at 1:33. In other words, the court found that a wrongful exclusion can dissolve a partnership automatically through operation of law.

Before it becomes necessary to determine whether the events described by the Estate constituted wrongful exclusions from the partnership, we first consider whether the District Court was correct in finding that such exclusions are sufficient to dissolve a partnership through operation of law and without the need for a judicial decree.

In support of its finding, the District Court relied primarily on In re Crutcher, 209 B.R. 347 (Bankr.E.D.Pa. 1997), a case in which a debtor was wrongfully expelled from a partnership, and then, a year later, petitioned the court for dissolution of the partnership. Id. at 352. The Crutcher court held that the partnership had dissolved as of the date of the debtor's expulsion, and that the filing date of the debtor's petition for dissolution was "irrelevant to the date of dissolution." Id. The court explained:

> To determine the date of dissolution, it is necessary first to consider the cause of dissolution. Under the Pennsylvania Uniform Partnership Act ("PUPA"), specifically 15 Pa.C.S. S 8353(1)(iv), dissolution is caused by the "expulsion of any partner from the business . . . ."

Id. Regarding the act of expulsion as the cause of dissolution, the court treated the date of expulsion as the date of dissolution. Unfortunately, in failing to quote and consider the second half of S 8353(1)(iv), the court improperly broadened the scope of that subsection.

In its entirety, S 8353(1)(iv) provides that dissolution is caused, without violation of the agreement between the partners, "[b]y the expulsion of any partner from the business bona fide in accordance with such a power conferred by the agreement between the partners." 15

Pa.C.S. S 8353(1)(iv) (emphasis added). The full text makes clear that not all partner expulsions are sufficient to cause automatic dissolution through operation of law. Only those expulsions that are in accordance with an expulsion power conferred by the partnership agreement will cause an immediate dissolution.

The court in Crutcher failed to differentiate partner expulsions that automatically cause the dissolution of partnerships from those that merely serve as potential

grounds for dissolution by judicial decree. The latter category lies within the purview of S 8354(a), which provides the following general rule:

> On application by or for a partner, the court shall decree a dissolution whenever:
>
> (1) A partner has been declared a lunatic in any judicial proceeding or is shown to be of unsound mind.
>
> (2) A partner becomes in any other way incapable of performing his part of the partnership contract.
>
> (3) A partner has been guilty of such conduct as tends to affect prejudicially the carrying on of the business.
>
> (4) A partner willfully or persistently commits a breach of the partnership agreement or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him.
>
> (5) The business of the partnership can only be carried on at a loss.
>
> (6) Other circumstances render a dissolution equitable.

15 Pa.C.S. S 8354(a). It is not difficult to see how the acts of one or more partners to exclude another partner from the partnership could serve as grounds for dissolution under the broad language of SS 8354(a)(4) or (a)(6). Such acts of exclusion by a partner would likely tend to make it"not reasonably practicable to carry on the business in partnership with him." 15 Pa.C.S. S 8354(a)(4). Further, it does not seem farfetched that the expulsion of a partner would constitute a circumstance that "render[s] a dissolution equitable." 15 Pa.C.S. S 8354(a)(6).

The key point, however, is that when such acts of exclusion are not committed "in accordance with[an expulsion] power conferred by the agreement between the partners," they do not result in the instantaneous

dissolution of the partnership. They merely serve as

grounds by which a court can decree a dissolution under
S 8354. See Herman v. Pepper, 166 A. 587, 588 (Pa. 1933)
(noting that "[t]he exclusion of one partner by another . . .
is undoubtedly ground for dissolution by a court of equity")
(emphasis added); see also Potter v. Brown, 195 A. 901,
903-04 (Pa. 1938) (observing that it is "well settled" that the
exclusion of a partner is a ground for dissolution).

In this case, because the alleged acts of exclusion from
the Legends Partnership by Leah and Victor were not in
accordance with an expulsion power explicitly conferred by
the Partnership Agreement, they did not cause the
dissolution of the partnership. At the very most, such
exclusionary acts could have served as grounds for
dissolution if either Leah or Victor had applied for a
dissolution by decree of court pursuant to S 8354. Since
neither of them did so, the claimed exclusions are irrelevant
to the partnership's date of dissolution. That being the
case, there is no need for us to determine whether Leah or
Victor had ever actually been wrongfully excluded from the
partnership.

B. The Bankruptcy Filing

The Estate next contends that, even if an exclusion of
Leah or Victor did not cause the dissolution of the Legends
Partnership, the partnership was dissolved when Victor
filed a bankruptcy petition under Chapter 11 of the
Bankruptcy Code. This argument raises the question of
whether the bankruptcy of a general partner results in the
dissolution of the partnership.

At first glance, Pennsylvania law appears to provide a
clear answer. Under S 8353, the bankruptcy of a partner,
unlike the general expulsion of a partner, does in fact cause
the automatic dissolution of the partnership. 15 Pa.C.S.
S 8353(5). Our analysis would end neatly right here if our
concerns extended only to the application of Pennsylvania
law. We must also consider, however, the role of federal
bankruptcy law and the impact of its interplay with state
partnership law. As a survey of the case law reflects, in
attempting to reconcile the Bankruptcy Code with state law
on this issue of partnership dissolution, courts have been

largely divided. Compare, e.g., In re Nizny, 175 B.R. 934,
939 (Bankr.S.D.Ohio 1994) (holding that filing of federal
bankruptcy case by partner does not dissolve general
partnership); In re Hawkins, 113 B.R. 315, 316-17
(Bankr.N.D.Tex. 1990) (same); In re Todd, 118 B.R. 432,
435 (Bankr.D.S.C. 1989) (same); In re Corky Foods Corp.,
85 B.R. 903, 904 (Bankr.S.D.Fla. 1988) (same); In re
Safren, 65 B.R. 566, 569-70 (Bankr.C.D.Cal. 1986)(same),

with Phillips v. First City, Texas-Tyler, N.A. (In re Phillips),
966 F.2d 926, 929 (5th Cir. 1992) (holding that partner's
federal bankruptcy filing causes dissolution of partnership);
In re Burnett, 241 B.R. 438, 439 (Bankr.E.D.Ark. 1999)
(same); In re Sunset Developers, 69 B.R. 710, 712-13
(Bankr.D.Idaho 1987) (same); Finkelstein v. Security
Properties, Inc., 888 P.2d 161, 164 (Wash.Ct.App. 1995)
(same). The contrary holdings of the Bankruptcy Court and
the District Court in this case further reflect the confusion
and controversy that has surrounded this issue. We review
their findings as a starting point for our analysis.

In holding that Victor's bankruptcy filing did not cause
the dissolution of the Legends Partnership, the Bankruptcy
Court reasoned that the Partnership Agreement constitutes
an executory contract and, as such, cannot be dissolved
pursuant to 11 U.S.C. S 365(e)(1).2  That section of the
Bankruptcy Code states:

> Notwithstanding a provision in an executory contract
> . . . or in applicable law, an executory contract . . . of
> the debtor may not be terminated or modified . . . at
> any time after the commencement of the case solely
> because of a provision in such contract . . . that is

---

2. The District Court agreed with the Bankruptcy Court's holding that
the Partnership Agreement constitutes an executory contract, which
appears to be consistent with the majority rule. See, e.g., Summit Inv. &
Dev. Corp. v. Leroux, 69 F.3d 608, 610 n.3 (1st Cir. 1995); In re Siegal,
190 B.R. 639, 643 (Bankr.D.Ariz. 1996); Nizny , 175 B.R. at 936; Clinton
Court, 160 B.R. at 60; Corky Foods Corp., 85 B.R. at 904. But cf. In re
Smith, 185 B.R. 285, 293 (Bankr.S.D.Ill. 1995) (finding that limited
partnership agreement should not be considered executory contract if
limited partner is purely passive investor not owing substantial future
performance to limited partnership). In any case, the parties do not
contest this issue on appeal.

11

> conditioned on . . . the commencement of a case under
> this title.

11 U.S.C. S 365(e)(1)(B). In other words,S 365(e)(1)
invalidates ipso facto provisions, which, in this context, are
provisions of law or contract which specify that"a
bankruptcy filing per se will terminate or modify" an
executory contract. In re Clinton Court, 160 B.R. 57, 59
(Bankr.E.D.Pa. 1993). Because S 8353(5) of Pennsylvania's
UPA provides for the dissolution (or "modification") of a
partnership agreement upon the bankruptcy of a partner,
the Bankruptcy Court concluded that S8353(5) is an ipso
facto provision and that S 365(e)(1) prevented it from
causing the dissolution of the Legends Partnership.

In stark disagreement with the Bankruptcy Court, the
District Court held that Victor's bankruptcy did, in fact,
constitute an event sufficient to cause the dissolution of the
partnership. In doing so, the court relied heavily on the

following language in a footnote in Crutcher:

> While this court held, in In re Clinton Court , 160 B.R.
> 57, 58-60 (Bankr.E.D.Pa. 1993), that a bankruptcy
> filing by a partner should not preclude a partnership
> from filing a bankruptcy case, on the grounds that this
> result would violate 11 U.S.C. S 365(e)(1), the
> partnership is not a debtor here. Thus, S 365(e)(1) does
> not come into play. It therefore appears that . . . the
> partnership would necessarily have to be held to have
> been dissolved as of [the date the partner filed
> individually for bankruptcy].

Crutcher, 209 B.R at 352 n.2. Noting that the partnership
is not a debtor in this case, the District Court similarly
concluded that S 365(e)(1) does not apply and, thus, that
Victor's bankruptcy filing resulted in the dissolution of the
partnership under S 8353(5).

In considering the applicability of S 365(e)(1), we find that
the District Court's reliance on Crutcher is misplaced. As
the District Court explained, Crutcher does appear to
suggest that "S 365(e)(1) does not come into play" when "the
partnership is not a debtor." 209 B.R. at 352 n.2. However,
we see no support outside of Crutcher for that proposition.

12

In fact, such a holding appears contrary to Clinton Court,
the case to which Crutcher cites on this point.

In Clinton Court, more than two years after one of two
partners of a general partnership filed for bankruptcy, the
partnership itself filed for bankruptcy. 160 B.R. at 58.
Citing to S 8353(5), a secured creditor of the partnership
claimed that the partnership had been dissolved upon the
individual partner's bankruptcy filing. Id. Clinton Court
rejected that argument, finding that S 365(e)(1) prevented
the partner's bankruptcy from causing the dissolution of
the partnership. Id. at 60. While it is true that the
partnership was a debtor in Clinton Court, there is no
reason to believe that the applicability of S 365(e)(1)
depended upon the partnership's debtor status. Indeed, the
facts underlying Clinton Court show otherwise. If S 365(e)(1)
were to come into play only when the partnership is a
debtor, then the individual partner's bankruptcy filing,
which occurred over two years prior to the partnership's
bankruptcy, would have caused the partnership to dissolve
as a matter of law under S 8353(5). Because the court in
Clinton Court held that the individual partner's bankruptcy
filing did not dissolve the partnership at a time when the
partnership was not a debtor, it would be entirely
inconsistent for the court to have regarded a partnership's
debtor status as a necessary condition for the applicability
of S 365(e)(1).

Thus, we reject the District Court's conclusion that, as a
result of the partnership's non-debtor status, S 365(e)(1) is
inapplicable to this case. We see no reason why the

statute's applicability should hinge upon whether the partnership itself has filed for bankruptcy. This is not to say, however, that we have now settled the question of whether S 365(e)(1) prevented the dissolution of the Legends Partnership. Courts have held that, under certain circumstances, other subsections of the Bankruptcy Code, namely SS 365(e)(2)(A) and 365(c), precludeS 365(e)(1) from invalidating ipso facto provisions that would dissolve a partnership.3 See, e.g., Sunset Developers, 69 B.R. at 712-

_____

3. We note that this position is in contrast with the recommendation of the National Bankruptcy Review Commission, an independent

13

13 (holding that S 365(c) prevented S 365(e) from applying to partnership agreement); Finkelstein, 888 P.2d at 165 n.3 (holding that "[s]ection 365(e)(2) clarifies Congress' intention to prevent only private contracts from counteracting the Bankruptcy Code, not to prevent state law, such as partnership law, from determining the status of a partnership"); cf. In re Harms, 10 B.R. 817, 821-22 (Bankr.D.Colo. 1981) (holding that limited partnership dissolved on day of general partner's bankruptcy filing because, "[u]nder Section 365(c) of the Bankruptcy Code, executory [limited] partnership agreements cannot be assumed by a debtor-in-possession without the consent of all the limited partners"). We now consider the impact of these subsections in this case.

As we discussed above, S 365(e)(1)(B) provides that an executory contract of a debtor cannot be terminated or modified by a provision of law or contract that is conditioned upon the commencement of the debtor's case under the Bankruptcy Code. The scope of this anti-ipso facto provision is limited, however, by S 365(e)(2), which reads, in relevant part:

>      (2) Paragraph (1) of this subsection does not apply to
>      an executory contract . . . of the debtor, whether or not
>      such contract . . . prohibits or restricts assignment of
>      rights or delegation of duties, if--

_____

commission established through the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 108 Stat. 4106 (1994). In its Final Report, filed in 1997, the Commission recommended that "[i]pso facto provisions relating to partnerships, LLCs, and the rights or interests of partners or LLC members should not be enforceable under the Bankruptcy Code." National Bankruptcy Review Commission, Bankruptcy: The Next Twenty Years S 2.3.22, at 432 (1997). The Commission went on to explain:

>      This position is consistent with the Bankruptcy Code treatment of
>      ipso facto provisions in other types of property interests. [Footnote
>      omitted.] Just because a partner or LLC member has sought relief
>      under the Bankruptcy Code, there is no compelling interest served
>      by mandating an automatic dissolution of the partnership or buyout
>      of the debtor partner's interest.

Id. S 2.3.22, at 435.

(A)(i) applicable law excuses a party, other than the debtor, to such contract . . . from accepting performance from or rendering performance to the trustee or to an assignee of such contract . . . , whether or not such contract . . . prohibits or restricts assignment of rights or delegation of duties; and

(ii) such party does not consent to such assumption or assignment . . . .

11 U.S.C. S 365(e)(2)(A) (emphasis added). In interpreting this limitation on S 365(e)(1), we must also consider the impact of S 365(c), which closely tracks the language of S 365(e)(2). In relevant part, S 365(c)(1) states:

(c) The trustee may not assume or assign any executory contract . . . of the debtor, whether or not such contract . . . prohibits or restricts assignment of rights or delegation of duties, if--

(1)(A) applicable law excuses a party, other than the debtor, to such contract . . . from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract . . . prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment . . . .

11 U.S.C. S 365(c)(1) (emphasis added).

As the Ninth Circuit noted in In re Catapult Entertainment, Inc., 165 F.3d 747 (9th Cir. 1999), "the proper interpretation of S 365(c)(1) has been the subject of considerable disagreement among courts and commentators." Id. at 749; see generally William J. Norton, Jr., Norton Bankruptcy Law and PracticeS 155:2 (2d ed. 2001); Lawrence D. Cherkis et al., Collier Real Estate Transactions and the Bankruptcy Code P 4.07[2] (2001); Daniel J. Bussel & Edward A. Friedler, The Limits on Assuming and Assigning Executory Contracts, 74 Am. Bankr. L.J. 321 (2000). We find that it is not necessary in this case, however, to delve into the complex issues of statutory interpretation that have arisen from the contours

of S 365. Because there is no evidence that Leah did not consent to remaining partners with Victor during the period in which he had become a debtor, we hold that neither SS 365(c)(1) nor 365(e)(2)(A) precluded or limited the

application of S 365(e)(1).

By their own terms, S 365(c)(1) and S 365(e)(2)(A) are applicable to executory contracts only when the non-debtor party "does not consent to [the] assumption or assignment" at issue. 11 U.S.C. S 365(c)(1)(B) and S 365(e)(2)(A)(ii). In the partnership context, at issue is whether a partner who becomes a debtor after filing for bankruptcy will assume the same partnership role that he had prior to becoming a debtor. When a partner files for bankruptcy, a co-partner may not want to continue in the partnership with the debtor because, "upon securing bankruptcy-court protection, a general partner who becomes a debtor-in-possession of her personal estate necessarily assumes responsibilities to her creditors that conflict with her responsibilities to her co-partners." Phillips, 966 F.2d at 929 (citing Harms, 10 B.R. at 822). Subsections 365(c) and 365(e)(2) will prevent a debtor in bankruptcy from continuing to serve as a partner, however, only when a non-debtor partner does not consent to continue in the partnership with the debtor.

In this case, there is no evidence whatsoever that Leah objected to having Victor remain as her general partner after he had filed his bankruptcy petition. In fact, the record demonstrates that Leah, with full knowledge that Victor had filed for bankruptcy, continued to regard Victor as her general partner. The partnership tax returns for 1997 and 1998, both of which were signed and filed by Leah, continued to list Victor as a general partner despite his debtor status. Although she had ample opportunity, Leah took no steps indicating that she did not consent to Victor's continuing status as a general partner after he filed his bankruptcy petition. In light of these facts, we find that Leah effectively consented to remain partners with Victor despite his debtor status and, thus, that S 365(c)(1) and S 365(e)(2)(A) do not apply. That being the case, we conclude that S 365(e)(1) is fully applicable here and, therefore, Victor's bankruptcy filing did not result in the dissolution of the Legends Partnership.

16

IV.

Because we find that the acts of exclusion and the bankruptcy filing discussed above did not result in the dissolution of the Legends Partnership, we conclude, pursuant to 15 Pa.C.S. S 8353(4), that the event which actually caused the dissolution of the partnership was Victor's death on January 12, 1999. Having improperly concluded that the partnership was dissolved prior to Victor's death, the District Court did not reach the question of whether Leah properly exercised her option to purchase Victor's partnership interest in accordance with Paragraphs 18 and 19 of the Partnership Agreement. Thus, we will vacate the District Court's order and will remand the case for the District Court to determine whether Leah validly exercised her option to purchase Victor's interest.

RENDELL, Circuit Judge, Concurring:

I agree with Judge Fuentes that the events relied upon did not cause a dissolution of the partnership. I write separately merely to note that my agreement with the result we reach -- by way of a complex path -- is based not only on the statutes and case law, but also on the context presented to us and the facts of this case, as well as the further support I find in the applicable provisions of the partnership agreement at issue.

Surprisingly, there is a paucity of case law on the issue of when a dissolution occurs as a matter of law. None of the cases we rely upon have answered the precise question before us. I fear that the lack of direction from the case law makes the analysis seem a bit torturous, but I think that it becomes somewhat smoother when the facts, especially the agreement itself, are considered.

The task actually presented to the District Court, and to us, is the construction of the parties' agreement. It seems clear that the parties' intention, as reflected in the language they chose and in their conduct, compels the result we reach. See McClimans v. Barrett, 419 A.2d 598, 600 (Pa. Super. Ct. 1980) ("A partnership agreement as a contract must be interpreted in accordance with the intent of the parties . . . ."). For one thing, the parties' agreement gives the other party, in the event of "dissolution by withdrawal or other act of one partner," the ability to"continue the Partnership business" by purchasing the other's interest. This anticipates an act of dissolution that would result in a winding up or discontinuance of the business. Here, there is no hint that either of the events asserted impacted the continued existence of the partnership or its business. And, after each of the relevant events, the parties themselves demonstrated an intent that the partnership continue as an ongoing entity, with Victor himself listing his partnership interest as an asset in his bankruptcy proceeding and tax returns' having been filed listing both Victor and Leah as partners.

Accordingly, I agree with Judge Fuentes that a triggering "dissolution" did not occur here.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit